******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* BRANDON
MONTRELL BELLAMY
(SC 19337)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald,
Espinosa and Robinson, Js.

*Argued December 7, 2015—officially released October 25, 2016*

*James B. Streeto*, senior assistant public defender, for the appellant (defendant).

*James M. Ralls*, assistant state's attorney, and *Laurie N. Feldman*, special deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Kevin C. Doyle*, former senior assistant state's attorney, for the appellee (state).

*Opinion*

ZARELLA, J. The defendant, Brandon Montrell Bellamy, appeals from the judgment of the Appellate Court affirming his conviction, rendered after a jury trial, of two counts of murder in violation of General Statutes § 53a-54a (a), and one count each of assault in the first degree in violation of General Statutes § 53a-59 (a) (5), criminal possession of a pistol in violation of General Statutes § 53a-217c (a), and carrying a pistol without a permit in violation of General Statutes § 29-35. The defendant claims that the Appellate Court incorrectly determined that he waived his unpreserved jury instruction claim under the rule established in *State* v. *Kitchens*, 299 Conn. 447, 482–83, 10 A.3d 942 (2011).[1] The defendant further contends that the rule in *Kitchens* should be overturned because it is confusing, unworkable, interferes with the trial court's discretion to review unpreserved claims and does not serve the interests of justice.[2] We conclude, following a careful review of the record, that the Appellate Court correctly determined that the defendant waived his unpreserved jury instruction claim. We also conclude that the rule in *Kitchens* should not be overturned. Accordingly, we affirm the judgment of the Appellate Court.

I

We begin with the defendant's waiver claim. The defendant contends that the trial court's instruction on identification witnesses was deficient because it did not inform the jury that the certainty of a witness' identification does not mean that the identification is accurate, or that factors such as distance, lighting, a witness' emotional state and the time between the crime and the witness identification are also relevant in considering the accuracy of an identification. The state responds that defense counsel indicated that he understood and accepted the trial court's proposed instruction, and, therefore, the defendant's claim is unreviewable under the waiver rule in *Kitchens*. We agree with the state that the defendant's claim is unreviewable.[3]

The following facts and procedural history are relevant to our resolution of this claim. On Thursday, November 4, 2010, two days after commencement of the evidentiary portion of the trial, the court gave counsel a draft of the proposed jury instructions. The court also notified counsel that, if they would like to make any additional changes to the instructions, they should inform the court by the following Monday, November 8, although counsel were free to file supplemental instruction requests after that time in light of additional evidence. The court added: "If there's anything either in the court's language or an additional area that I would call nonstandard that you want included, please let the court know." The court also stated that it expected jury deliberations to begin on Tuesday, November 9. The

proposed instructions do not appear to have been marked for identification or otherwise made part of the record.

On Monday, November 8, following conclusion of the evidence, the trial court stated for the record that it was going to meet with counsel in chambers for "a legal charging conference." The court explained: "[I]t's the actual law the court is going to give tomorrow as it relates to the charges themselves and any kind of law that would apply to this case based on identification witnesses, inconsistent testimony, etc., charges that need to go to the jury in order to complete the record of the case." The court added that it would try to incorporate any specific requests by counsel into the proposed charge. The court also indicated that it had given counsel copies of the court's proposed general and specific instructions. A brief recess followed, during which the court consulted with counsel in chambers.

After the recess, the court described the proceeding to follow as "our legal session for the charging conference." The court first observed that it had given counsel for both sides copies of the proposed general instructions. It then described certain changes unrelated to the identification issue that it intended to make in response to requests by counsel, adding that it also intended to change the instructions to read that it was the state's burden to prove beyond a reasonable doubt that the defendant had committed the charged crimes, to which defense counsel specifically assented. The court next discussed the proposed identification instruction, explaining: "With respect to identification, I did give an identification section in the charge which outlines on page 14 that the jur[ors] must be satisfied in making the identification, including some of the factors they can consider in this evidence. However, I'm going to expand that language to include . . . language to the effect that, in every criminal prosecution, it is the state's responsibility to show that the defendant is the person who committed the offense, and if they are not satisfied of that evidence, then they cannot find the defendant guilty of any particular offense. I'm going to highlight that because, obviously, that is an issue in this case." The court also indicated its willingness to change language in the proposed instructions referring to the possession of a weapon, as suggested by defense counsel. After the court asked if there were any other exceptions, defense counsel responded: "Not at this time, Your Honor." The court replied: "Okay, I appreciate your coming back up, and, with that, because the charge is now complete, we can go right to the jury . . . . Okay?" Defense counsel simply responded: "Thank you, Your Honor." The court then adjourned for the day.

When the proceeding resumed the next morning, the court initially noted that it had conducted an on-the-record charging conference the previous day, during

which it had made certain changes to the jury instructions suggested by counsel. The court also clarified that the jury instructions would contain no reference to lesser included offenses, and both counsel agreed that this was appropriate. After the court asked if there was "[a]nything else" of concern the parties wanted to discuss before the jury was brought into the courtroom, counsel responded: "Nothing from [the] defense, Your Honor." The jury then returned to the courtroom, and the court delivered its instructions.

The trial court's jury instructions addressed the issue of identification two different times. The court first addressed the identification issue indirectly when it instructed the jury regarding how to decide whether to believe a witness' testimony.[4] It later addressed the issue directly in its charge on identification.[5] Defense counsel took no exception to either instruction. Defense counsel instead stated that he did not object to the instructions, agreed with the state regarding a clarification relating to the elements in the weapons counts, and asked the court to eliminate the instruction on proof of the felony conviction. The court agreed to the suggested changes and asked if there was anything else defense counsel wanted to discuss, to which counsel replied in the negative.

The defendant was convicted on all counts. On January 7, 2011, the court held a sentencing hearing. At the hearing, defense counsel initially argued in support of three postverdict motions the defendant had filed to arrest judgment, for judgment of acquittal, and for a new trial. In his argument, counsel stated that all three motions were based principally on the allegedly rapid speed with which the jury instructions had been delivered. Counsel specifically argued: "[I]t's not the content of the jury instructions. The jury instruction says we went through the charging conference. We conferred. We agreed on them. I didn't take any exceptions. The issue I had, Your Honor, was the speed with [which] the court went through the instructions to the jury." Counsel indicated that the speed of the instructions was important because it affected the jurors' ability to follow them. The court denied all three motions, reasoning that "the jur[ors] did have the benefit of the actual transcript of the court's instructions going in with them in their deliberative process."

Thereafter, the defendant appealed from the judgment of conviction.[6] The defendant claimed, among other things, that "the [jury] instructions on the issue of [the accuracy of an] identification were prejudicially erroneous and deprived him of [his constitutional right to] a fair trial . . . ." *State* v. *Bellamy*, 149 Conn. App. 665, 669, 89 A.3d 927 (2014). The defendant specifically contended that the instructions departed from the standard criminal jury instructions promulgated by the Judicial Branch because they failed to inform the jury that

the certainty of a witness' identification does not equate with its accuracy. Id. He also contended that the instructions had failed to list other relevant factors relating to the accuracy of a witness identification, such as distance, lighting, the emotional state of the witness, and the time between the crime and the identification. Id. The defendant, who apparently had filed no request to charge, conceded that this claim was unpreserved and sought review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[7] *State* v. *Bellamy*, supra, 671. The Appellate Court noted, however, that a claim that has been waived at trial fails to satisfy the third prong of *Golding*.[8] Id., 671–72. The court thus determined that, in order to decide whether the defendant's claim was reviewable under *Golding*, it was required, under *Kitchens*, to first consider whether the claim had been waived at trial. Id. Applying the waiver rule in *Kitchens*, the court ultimately concluded that the claim had been waived. Id., 673–74. The court summarized: "[D]efense counsel, having been provided with a draft copy of the jury instructions and a meaningful opportunity to review them and to alert the court to any potential issues, declined to object in any way to the portion concerning identification, and affirmatively expressed his satisfaction with the content of the instructions. Under these circumstances, the defendant has waived his claim of instructional error, and, accordingly, it fails under the third prong of *Golding*." Id.; see also footnote 3 of this opinion.

On appeal to this court, the defendant contends that the Appellate Court incorrectly concluded that he waived his claim of instructional error. We disagree. In *Kitchens*, we stated: "[W]hen the trial court provides counsel with a copy of the proposed jury instructions, allows a meaningful opportunity for their review, solicits comments from counsel regarding changes or modifications and counsel affirmatively accepts the instructions proposed or given, the defendant may be deemed to have knowledge of any potential flaws therein and to have waived implicitly the constitutional right to challenge the instructions on direct appeal. Such a determination by the reviewing court must be based on a close examination of the record and the particular facts and circumstances of each case."[9] *State* v. *Kitchens*, supra, 299 Conn. 482–83.

In the present case, all of the foregoing criteria were satisfied. The trial court gave both defense counsel and the state a copy of its proposed jury instructions four days before the charging conference. Two of the four days fell on a weekend, thus providing counsel with even more time to review the instructions. The court also solicited comments from counsel regarding modifications to the instructions during the in-chambers charging conference, during the proceedings in open court directly after the charging conference and on the following day immediately before instructing the jury.

In addition, when the court discussed portions of the identification instruction on the record, defense counsel expressed no dissatisfaction with the instruction, although he commented on several other instructions. Counsel thus indicated that he had read and understood the instructions in their entirety and took no issue with any part, including the instruction on identification. Finally, defense counsel explicitly conceded during the sentencing hearing that he had agreed with the substance of the jury instructions before they were given and that his only objection was to the speed with which they had been delivered by the court. Accordingly, we conclude that the defendant implicitly waived his jury instruction claim under the rule articulated in *Kitchens*.

Notwithstanding these compelling facts, the defendant claims that he did not agree to the trial court's identification instruction. He contends that, in the absence of a marked copy of the jury instructions, there is no evidence in the record that defense counsel reviewed and approved of the precise language of the identification instruction. He also notes that, although the trial court stated during the on-the-record charging conference that it intended to broaden and expand on the language in the proposed instruction, there is no evidence that defense counsel had an opportunity to review and approve of the revised instruction before it was given. He thus argues that defense counsel's statement at the sentencing hearing that he agreed with the content of the jury instructions "cannot be reconciled" with the state's burden of establishing waiver by showing that counsel reviewed the precise language being challenged on appeal, especially in light of counsel's claim at the hearing regarding the speedy delivery of the instructions. We disagree.

We first observe that the waiver rule in *Kitchens* does not require that a copy of the proposed jury instructions be marked as an exhibit. It only requires evidence that the trial court gave the parties a "copy of the proposed jury instructions" and that the reviewing court's determination of implied waiver "be based on a close examination of the record and the particular facts and circumstances of each case." *State* v. *Kitchens*, supra, 299 Conn. 482–83. Thus, in most instances, a combination of facts and circumstances rather than any single fact will support a finding of waiver. Moreover, a marked copy would not necessarily have provided the desired clarity as to what defense counsel waived because courts often make last minute changes to the jury instructions in on-the-record consultations with counsel immediately prior to their delivery, when there may be no time to memorialize the changes in a written document. Finally, to the extent the defendant suggests that the lack of a marked copy in the present case prevented the reviewing court from knowing that the trial court's draft included an instruction on eyewitness identification, we know that the draft included such an

instruction because the trial court referred to it during the on-the-record charging conference when it stated that it "did give an identification [instruction] in the charge," and the court even referred to the page containing the part of the instruction it wanted to amend. Accordingly, although a marked copy of the proposed jury instructions may be helpful in determining whether defense counsel assented to an instruction that is challenged on appeal, it is not a requirement under *Kitchens* if the record contains other persuasive evidence that defense counsel had knowledge of, and assented to, the instructions that were given.

Second, insofar as the defendant claims that he had no notice of the content of the final charge on witness identification because the court stated that it intended to "expand" that instruction, the defendant takes the trial court's language out of context and ignores the explanation that followed. What the court actually stated was that it intended to expand the language on page 14 of the proposed instructions "to include . . . language to the effect that, in every criminal prosecution, it is the state's responsibility to show that the defendant is the person who committed the offense, and if [the jurors] are not satisfied of that evidence, then they cannot find the defendant guilty of any particular offense. I'm going to highlight that because, obviously, that is an issue in this case." Accordingly, the trial court explained precisely how it intended to expand the language in the identification instruction and referred to the actual page on which the new language would be added. Furthermore, and as the Appellate Court noted, the only other change to the instructions even indirectly relating to witness identification was the court's addition of language instructing that the state had the burden to prove identity beyond a reasonable doubt; *State v. Bellamy*, supra, 149 Conn. App. 672 n.3; which has no relevance to the defendant's claim on appeal.

As for the defendant's suggestion that defense counsel indicated during the sentencing hearing that he had trouble following the jury charge because of its speedy delivery, the record shows that counsel's reference to a speedy delivery at the hearing had nothing to do with his ability to understand, and thus object to, the instructions that were given. The record instead shows that counsel was referring to the *jurors'* possible inability to understand the instructions because of their speedy delivery. The defendant thus misconstrues counsel's argument at the sentencing hearing.

Finally, the cases on which the defendant relies are inapposite because their facts are distinguishable from the facts in the present case. See *State* v. *Davis*, 311 Conn. 468, 478, 88 A.3d 445 (2014) (finding no waiver because trial court's stated intention to deliver charge proposed by state " 'in essence, maybe not exactly,' " which defense counsel had not read, failed to provide

adequate notice to defendant, and, therefore, "the trial court's failure to provide the defendant with the precise content of the proposed jury instructions deprived him of a meaningful opportunity to review the charge"); *State* v. *Devalda*, 306 Conn. 494, 505 n.15, 50 A.3d 882 (2012) (finding no waiver because record failed to indicate "when or whether the defendant received a written copy of the proposed jury instructions"); *State* v. *Brown*, 299 Conn. 640, 659, 11 A.3d 663 (2011) (finding no waiver because record failed to indicate whether copy of final instructions given to counsel included correct charge or charge actually delivered to jury); *State* v. *Collins*, 299 Conn. 567, 597, 598, 10 A.3d 1005 (finding no waiver because record contained "no indication" that trial court gave defendant advance copy of proposed jury instruction and, therefore, reviewing court could not "say with certainty whether the defendant had a meaningful opportunity to review the written instruction itself and to challenge any objectionable language therein"), cert. denied,    U.S.   , 132 S. Ct. 314, 181 L. Ed. 2d 193 (2011). Although it is true that, in one case, *State* v. *Coleman*, 304 Conn. 161, 170 n.3, 174, 37 A.3d 713 (2012), this court observed in dictum[10] that discussing the specific language of a challenged jury instruction, in the absence in the record of a rough draft or the original completed draft, supported a finding that the defendant in that case had been given a meaningful opportunity to review the charge, this statement was not intended as a general rule that specific reference to the language at issue is a prerequisite to a finding of waiver if there is other evidence that the defendant has been given a meaningful opportunity to review the instructions. We therefore reject the defendant's contention that he did not waive his jury instruction claim in the present case.

## II

We next consider whether this court should overturn the waiver rule in *Kitchens*. The defendant contends that unpreserved claims of instructional error that satisfy the first two prongs of *Golding* should be considered by reviewing courts unless the error was induced or the claim was expressly waived by the challenging party. He specifically contends that *Kitchens* created an irrebuttable and incorrect presumption that all defense counsel who have had a meaningful opportunity to review draft jury instructions have knowledge of any and all constitutional errors contained therein, and that, through inaction or a silent record, all counsel are deemed under *Kitchens* to have waived a client's constitutional right to proper jury instructions for tactical reasons.[11] He further contends that this presumption is unrealistic because competent counsel who is aware of constitutional error never would waive a client's right to proper jury instructions, and the better explanation for counsel's silence is "[o]versight in the heat of battle," when time constraints do not allow for a lengthy review

of the instructions. Accordingly, the defendant does not characterize counsel's silence or inaction with respect to an alleged instructional error as waiver, but as forfeiture, which federal courts define as "the failure to make the timely assertion of a right"; *United States* v. *Olano*, 507 U.S. 725, 733, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993); accord *State* v. *Kitchens*, supra, 299 Conn. 474; see also *State* v. *Kitchens*, supra, 475 n.20; and review under the plain error doctrine. See *State* v. *Kitchens*, supra, 475 n.20. The defendant adds that the *Kitchens* rule improperly circumvents the policy expressed in *Golding* that unpreserved constitutional error should be reviewed and improperly shifts the responsibility for ensuring that the jury instructions are correct from the trial court and the state, where it belongs, to the defense.

The state responds that the defendant misunderstands the meaning of the *Kitchens* waiver rule. The state argues that, when the trial court asks counsel to make an informed and binding judgment regarding whether to accept the jury instructions and counsel acquiesces, counsel waives the procedural right to object to the instructions on any of the multitude of possible grounds that counsel might presently be aware of or later perceive. Thus, "procedural waiver of the opportunity to object, by a professional who knew what was at stake, foreclosed any number of possible challenges that counsel might or might not have considered." The state further argues that this understanding of waiver comports with Connecticut's uncontroverted waiver doctrine and that overturning the rule would invalidate an entire body of waiver jurisprudence in this jurisdiction. The state maintains that the waiver rule in *Kitchens* is good policy because it gives parties an incentive to participate in the formulation of the jury instructions in a timely manner when errors can be corrected, thus promoting fair trials. We agree with the state.

We begin by noting that this court adopted the waiver rule in *Kitchens* in order to clarify the law and to encourage the formation of accurate jury instructions consistent with the principles of fundamental fairness and the finality of judgments. To accomplish these objectives, the court explained that implied waiver may be found only after the trial court provides counsel with a written copy of the proposed instructions, allows counsel a meaningful opportunity to review them and solicits counsel's comments regarding proposed changes or modifications. *State* v. *Kitchens*, supra, 299 Conn. 482–83. Counsel, in turn, must affirmatively accept by words or conduct the instructions proposed or given. See id., 483–84. If the record contains evidence that any of these steps has been omitted, implied waiver may not be found. Thus, the rule "would not allow waiver to be presumed from a silent record or from defense counsel's mere acquiescence in, or failure to object to, the jury instructions. A silent record, by definition, would

not satisfy the [rule] because there would be no factual basis from which the court could infer a waiver, and mere acquiescence or failure to object, without more, would provide an insufficient basis for a finding of waiver because there would be no evidence from which the court could determine whether counsel had been given a meaningful opportunity to review, comment on and express satisfaction with the instructions, or whether counsel had, in fact, expressed such satisfaction before or after the instructions were given."[12] Id., 483 n.23. We further explained that our rules of practice provide counsel with many opportunities to participate in the crafting of jury instructions, including the filing of a written request to charge and the request for an on-the-record charging conference. Id., 488, 493–94. Accordingly, the waiver rule in *Kitchens*, which represents a synthesis of our precedent and our rules of practice, provides counsel with the means necessary to apprise the court of his views and to ensure the accuracy of the jury instructions. The rule also serves as notice to counsel of the responsibility to participate in formulating the jury instructions and of the potentially adverse consequences that may follow should counsel fail to act.

In light of these considerations, we emphatically disagree with the notion that the implied waiver rule is fundamentally unfair because it is based on the presumption that counsel was aware of, and rejected as a matter of trial strategy, every conceivable challenge to the jury instructions. The rule is not unfair because, as the state correctly observed and we stated in *Kitchens*, what is waived is the procedural right to appeal any defect in the jury instructions. See id., 483, 494. Even before our decision in *Kitchens*, Connecticut law provided that approval of the jury instructions by trial counsel acts as a waiver of *all* potential jury instruction claims and not merely claims arising from jury instructions that defense counsel specifically discussed on the record at trial. For example, in *State* v. *Holness*, 289 Conn. 535, 543–45, 958 A.2d 754 (2008), we specifically rejected the defendant's argument that he did not knowingly and intelligently waive his jury instruction claim and concluded that the defendant had waived every potential constitutional claim relating to the trial court's limiting instruction on hearsay evidence when defense counsel, in the exercise of his professional judgment, accepted the limiting instruction as satisfactory, even though counsel later argued he had been unaware that he could have raised a claim that the defendant's rights were violated under *Crawford* v. *Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). We explained that the state was not required to establish that defense counsel was aware of a possible constitutional claim in the factual scenario presented, but, rather, the trial court was entitled to presume that, in our adversary system, counsel was familiar with the

relevant constitutional principles and had acted competently in determining that the limiting instruction was adequate to safeguard the defendant's sixth amendment rights. *State* v. *Holness*, supra, 544. We similarly concluded in *State* v. *Brewer*, 283 Conn. 352, 360–61, 927 A.2d 825 (2007), decided a little more than one year before *Holness*, that defense counsel's expressed satisfaction with a jury instruction on a lesser included offense constituted a waiver of the defendant's right to claim constitutional error on a ground not specifically discussed at trial.[13] Thus, application of the waiver rule in *Kitchens* to a defendant's subsequent procedural right to challenge the jury instructions on *any* substantive ground is consistent with the principle articulated in prior cases that the waiver of a procedural right constitutes the waiver of all of the claims within it.

Justice Palmer, writing for the court, explained in *Holness* that "[t]o conclude otherwise would require the trial court to canvass defense counsel with respect to counsel's understanding of the relevant constitutional principles before accepting counsel's agreement on how to proceed . . . [and] there is nothing in our criminal law that supports such a requirement."[14] *State* v. *Holness*, supra, 289 Conn. 544. That is because a comprehensive canvass of this nature not only would be difficult if not impossible to conduct, but would not promote this court's interest in judicial economy, given the time required to determine whether counsel was aware of every conceivable constitutional principle under which an instructional flaw might be identified.

Our reasoning in *Kitchens* is also consistent with Connecticut and federal law governing a criminal defendant's waiver of other basic constitutional rights. These include the right to a jury trial; see, e.g., *State* v. *Rizzo*, 303 Conn. 71, 102–103, 31 A.3d 1094 (2011) (waiver of right to jury trial does not require canvass of various potential advantages of having jury decide case, and general knowledge of right being waived is sufficient), cert. denied,     U.S.    , 133 S. Ct. 133, 184 L. Ed. 2d 64 (2012); the right to a probable cause hearing; see, e.g., *State* v. *Wilkins*, 159 Conn. App. 443, 454, 123 A.3d 92 (waiver of right to probable cause hearing is valid "even when the trial court's waiver canvass does not exhaustively detail the procedural rights waived"), cert. denied, 319 Conn. 935, 125 A.3d 208 (2015); the right to enter a guilty plea; see, e.g., *United States* v. *Ruiz*, 536 U.S. 622, 630, 122 S. Ct. 2450, 153 L. Ed. 2d 586 (2002) (guilty plea is knowing and final waiver, "despite various forms of misapprehension under which a defendant might labor"); *United States* v. *Broce*, 488 U.S. 563, 573, 109 S. Ct. 757, 102 L. Ed. 2d 927 (1989) ("[o]ur decisions have not suggested that conscious waiver is necessary with respect to each potential defense relinquished by a plea of guilty"); *Edwards* v. *United States*, 256 F.2d 707, 709 (D.C. Cir.) ("a layman should expect a plea of guilty to be treated as . . . a waiver of all

defenses known and unknown"), cert. denied, 358 U.S. 847, 79 S. Ct. 74, 3 L. Ed. 2d 82 (1958); *Mainiero* v. *Liburdi*, 214 Conn. 717, 725, 573 A.2d 1207 (1990) ("[I]n order for a plea to be knowingly, voluntarily and intelligently made, a trial court is required to advise a defendant that his plea operates as a waiver of three fundamental constitutional rights—jury trial, confrontation and self-incrimination. . . . There is no requirement, however, that the defendant be advised of every possible consequence of such a plea." [Citation omitted; internal quotation marks omitted.]); *State* v. *Gilnite*, 202 Conn. 369, 374, 383, 521 A.2d 547 (1987) ("an unconditional nolo contendere plea, when intelligently and voluntarily made, operates as a waiver of all nonjurisdictional defects and bars later challenges to pretrial proceedings," but "[t]here is no requirement . . . that the defendant be advised of every possible consequence of such a plea"); the right to competent counsel; see, e.g., *Faretta* v. *California*, 422 U.S. 806, 836, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975) (court was not required to assess whether pro se defendant knew how well he had mastered intricacies of law in order to represent himself because "his technical legal knowledge . . . was not relevant to an assessment of his knowing exercise of the right to defend himself"); *State* v. *D'Antonio*, 274 Conn. 658, 711, 877 A.2d 696 (2005) (knowing and voluntary waiver of right to counsel does not require that defendant have "perfect comprehension of each element of a criminal charge"); and the right to raise a double jeopardy claim. See, e.g., *United States* v. *Cordoba*, 71 F.3d 1543, 1546 (10th Cir. 1995) ("[D]ouble jeopardy rights may be waived by agreement, even where double jeopardy was not specifically referred to by name in the plea agreement, when the substance of the agreement is to allow for double prosecution. . . . Conscious waiver is not necessary with respect to each potential defense relinquished by a plea agreement." [Citations omitted.]); *State* v. *Price*, 208 Conn. 387, 390, 544 A.2d 184 (1988) (constitutional immunity from double jeopardy is not constitutional right whose waiver must meet knowing, intelligent and voluntary standard but personal right that will be considered waived if not affirmatively pleaded at trial). In light of this overwhelming precedent, it makes sense to apply the same reasoning to trial counsel, who not only are presumed to understand the law and to provide competent representation, but are invited by our rules of practice to participate in the formulation of the jury instructions.[15] Accordingly, jury instruction waiver under Connecticut law *never* has been limited to instructions specifically discussed on the record at trial but has been understood as a waiver of the right to appeal all conceivable jury instruction claims that could have been raised in the trial court.

In sum, overturning *Kitchens* on the ground that waiver should be construed more narrowly would be

inconsistent with *Holness, Brewer* and other cases in which we have indicated that counsel's approval of the jury instructions waives all potential claims of instructional error. We have observed, with respect to other errors during trial proceedings, that "[w]hat this court said over [100] years ago still remains true today. A defendant must avail himself of the opportunity to make an objection and if he does not avail himself of the opportunity, he must be [held] to a waiver of the objection. Otherwise he would be permitted to lie by and speculate upon the chances of a verdict, and that cannot be tolerated." (Internal quotation marks omitted.) *State* v. *Evans*, 165 Conn. 61, 66, 327 A.2d 576 (1973), quoting *State* v. *Tuller*, 34 Conn. 280, 295 (1867); see also *Wainwright* v. *Sykes*, 433 U.S. 72, 89, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977) (waiver rule discourages " 'sandbagging' " by taking chances on acquittal, with intent to raise claims in habeas proceeding if gamble fails); *State* v. *Kurvin*, 186 Conn. 555, 566, 442 A.2d 1327 (1982) ("[p]ermitting [instructional] claims of error which could have been raised at trial to be raised for the first time on appeal encourages trial by ambuscade and tends to transform criminal trials into games of chance"). We thus see no reason in the present case to depart from our precedent and from our general waiver doctrine by overturning the rule in *Kitchens*, which is based on the same rationale articulated in *Holness* and Connecticut's other prior waiver cases.

The defendant nonetheless takes issue with all four policy grounds on which the court in *Kitchens* relied in concluding that the waiver rule is justified, including (1) the presumption that counsel is competent, (2) the rules of practice that provide for counsel's participation in the crafting of instructions, (3) the rules of fairness that place responsibility with the trial court and counsel to ensure that the instructions are correct, and (4) the existence of habeas review as a potential safety net. See *State* v. *Kitchens*, supra, 299 Conn. 486–89. We address each ground in turn.

First, to the extent the defendant contends that the *Kitchens* waiver rule presumes counsel is omniscient, rather than competent, and that the rule does not allow for consideration of possible distractions, fatigue, discouragement or simple ignorance, the defendant misunderstands the rule, the meaning of competent counsel and the ability of counsel to identify errors before the instructions are given. As we previously discussed in greater detail, waiver in the context of jury instruction claims, jury trials, probable cause hearings, guilty pleas, and claims of ineffective assistance of counsel and double jeopardy does not contemplate knowledge by trial counsel or the defendant of every conceivable claim that might be raised on appeal. Trial counsel thus need not be omniscient under the waiver rule in *Kitchens* in order to provide a defendant with adequate representation.

Insofar as the defendant also suggests that the rule will unfairly penalize defendants because of inadvertent mistakes by counsel resulting from fatigue, distractions or other factors relating to the rapid pace of a trial, competent counsel do not defer consideration of jury instructions until the last minute, thereby increasing the possibility of committing inadvertent mistakes. Counsel necessarily must consider what the state will be required to prove and how the jury should be instructed well before commencement of the trial proceedings in order to prepare a defense. Thereafter, our rules of practice provide counsel with multiple opportunities to participate in the formulation of proper jury instructions based on counsel's professional assessment of what the jury needs to know to decide the case fairly. Viewed in this light, the rule in *Kitchens* merely encourages counsel to utilize these opportunities, thus enhancing the probability that the instructions will be accurate. We therefore reject the defendant's claim that the waiver rule sets an unattainable standard that requires more than competent counsel. In fact, the opposite is true. As Justice Katz observed in her concurring opinion in *Kitchens*, a review of Connecticut cases decided between 2000 and 2010 indicates that "the number of cases in which a defendant obtains reversal of his conviction on the basis of *Golding* review of instructional errors is negligible"; id., 523 (*Katz, J.*, concurring); thus demonstrating that, prior to *Kitchens*, counsel rarely made major mistakes when assenting to jury instructions at trial and suggesting that this will continue to be the case. In sum, instead of unfairly burdening counsel or posing a difficult challenge, the waiver rule in *Kitchens* provides the court, the state and trial counsel with an additional procedural tool for ensuring that the instructions are correct.[16]

The defendant next claims that, although the rules of practice provide for counsel's participation in the formulation of jury instructions, the degree of participation necessary for waiver to be found never has been clearly enunciated, thus creating confusion and no clear pattern among cases decided after *Kitchens* for future guidance. We disagree. The rules of practice, together with the waiver rule in *Kitchens*, provide exceptionally clear guidance as to how counsel may avoid waiver and successfully preserve a jury instruction claim. For example, the rules of practice provide that counsel may file a written request to charge; Practice Book §§ 42-16, 42-17 and 42-18; request an on-the-record charging conference; Practice Book § 42-19; obtain a summary of the substance of the proposed instructions at the close of evidence; Practice Book § 42-19; discuss modification of the instructions for purposes of correction or clarification; Practice Book § 42-24; and be given notice and the opportunity to make suggestions when the jury requests additional instructions following the start of deliberations. Practice Book § 42-27. The speci-

ficity of these rules suggests that counsel who fail to participate in formulating the jury instructions but have been given a meaningful opportunity to review them are on official notice that, unless they have objected to a particular instruction or a portion thereof, they have waived all future jury instruction claims. The rules of practice therefore serve the twin goals of providing the jury with accurate instructions and protecting the courts from expending limited resources on the adjudication of collateral attacks on the verdict that otherwise might have been avoided.

Finally, even if there may be no clear pattern among the cases decided following *Kitchens*, the lack of such a pattern is not because the rule itself has never been clearly enunciated; rather, it is because reviewing courts are required to determine whether the unique facts and circumstances in any given case support a finding of waiver. This is no different from the type of "facts and circumstances" analysis we conduct in other contexts; *State* v. *Davalloo*, 320 Conn. 123, 144 n.15, 128 A.3d 492 (2016) (application of marital communications privilege "necessarily depends on the facts and circumstances of a particular matter"); see also *Trusz* v. *UBS Realty Investors*, *LLC*, 319 Conn. 175, 214 n.26, 123 A.3d 1212 (2015) (future resolution of conflict between employee's and employer's free speech rights under General Statutes § 31-51q will be "in light of the particular facts and circumstances then presented" [internal quotation marks omitted]); or from the "totality of the circumstances" test the court conducts when assessing the constitutionality of challenged out-of-court eyewitness identifications; (internal quotation marks omitted) *State* v. *Marquez*, 291 Conn. 122, 160, 967 A.2d 56, cert. denied, 558 U.S. 895, 130 S. Ct. 237, 175 L. Ed. 2d 163 (2009); or the probable cause necessary for a warrantless arrest based on an informant's tip. *State* v. *Johnson*, 286 Conn. 427, 437, 944 A.2d 297, cert. denied, 555 U.S. 883, 129 S. Ct. 236, 172 L. Ed. 2d 144 (2008). Cases subject to these tests do not fall easily into predictable patterns because the facts and circumstances in each case are necessarily unique.[17]

The defendant also claims that the rule in *Kitchens* unfairly places the entire burden on defendants because the defendant is the only party who suffers a penalty when a reviewing court finds waiver. He adds that the rule provides a disincentive for the state to identify and correct errors when it knows that a review of any potential error will be waived if it does not object to the instructions, thus allowing the state to enjoy all of the benefits and suffer none of the risks of its trial strategy. The defendant further contends that the rule improperly and unfairly shifts a portion of the decision as to which unpreserved claims are adjudicated from the court to the state. These arguments are unpersuasive.

First, they ignore the significant fact that only a defendant is entitled to raise on appeal a claim that the jury instructions were incorrect. This means that, if the defendant is acquitted on the basis of instructions that misstate an element of the crime, the state may not appeal from the judgment on that ground but must accept the acquittal, even if the evidence may have been sufficient to establish the defendant's guilt under the proper instruction. See *State* v. *Ledbetter*, 240 Conn. 317, 323, 692 A.2d 713 (1997) ("under most circumstances, the state may not appeal from a judgment of acquittal, even when that judgment may have been the result of a misconstruction of the law"). Moreover, the state has an ethical obligation to seek justice and to bring to the court's attention any inaccuracy or deficiency in the jury instructions. The state thus has a strong incentive to make sure that the jury instructions are correct. Second, a finding of waiver opens the door to a future habeas proceeding on which the state and the court will be required to expend additional limited resources that could have been devoted to other pending trials.[18] Third, trial courts have a duty "to give jury instructions that are accurate in law, adapted to the issues and adequate to guide the jury in reaching a correct verdict"; *State* v. *Butler*, 207 Conn. 619, 636, 543 A.2d 270 (1988); and no judge, as a matter of pride and reputation, wants a reviewing court to deem the jury charge legally incorrect or inadequate to guide the jury. As a consequence, the waiver rule serves as an incentive for all those involved in the trial proceedings, including the state and the presiding judge, to make certain that the jury instructions are accurate,[19] a conclusion with which the defendant indirectly agrees in his argument on judicial economy.[20]

As for the defendant's argument that the *Kitchens* waiver rule allows the state to exercise undue influence over whether unpreserved constitutional claims are reviewed under *Golding* because the state may decide against making a waiver claim in some cases for tactical reasons, this argument is highly speculative. The defendant does not suggest what that tactical advantage might be, and we perceive none. By failing to make a waiver claim, the state must then defend against the claim and risk a decision by the reviewing court in favor of the defendant. Even if the defendant's argument had some degree of validity, the defense must bear its share of responsibility for making certain that the jury instructions are correct. Thus, when defense counsel fails to take advantage of the many opportunities available during the trial proceedings to obtain accurate instructions, the defendant cannot blame the state for deciding in some cases and not in others to assert a claim of waiver. Regardless of any uncertainty, however, defendants should expect the state to assert a waiver claim in *any* case in which such a claim may be validly raised and have no reason to complain if the state fails to do so.

With respect to habeas review, the defendant argues that review typically takes place several years after the resolution of a direct appeal, prevents the speedy correction of obvious constitutional errors and puts further pressure on an already overburdened habeas docket. We agree that habeas review delays the resolution of an instructional claim that is deemed waived on direct appeal. We nonetheless consider habeas review good policy because only in the habeas court may a record be developed sufficient to determine whether counsel waived the claim for constitutionally acceptable strategic reasons. See *State* v. *Kitchens*, supra, 299 Conn. 497. As we explained in *Kitchens*: "[A] habeas proceeding provides a superior forum for the review of a claim of ineffective assistance because it provides the opportunity for an evidentiary hearing in which the attorney whose conduct is challenged may testify regarding the reasons he did not contest the instruction at trial. . . . A habeas proceeding thus enables the court to determine whether counsel's failure to take exception or otherwise to participate in formulating the instructions was due to mere incompetence or to counsel's trial strategy, which would not be possible in a direct appeal in which there is no possibility of an evidentiary hearing. An aggrieved party is thus not without recourse in the event that the court deems a claim of instructional impropriety waived on appeal." (Citation omitted.) Id., 496–97. In other words, the factual record on direct appeal is insufficient to determine whether counsel was making a strategic decision or whether his failure to object to the instruction was an oversight.

*Kitchens* provides a perfect example of the value of habeas review. On direct appeal, this court determined that the defendant had waived his unpreserved claim of instructional error. Id., 500. The defendant then filed a habeas petition, in which he argued that his trial counsel rendered ineffective assistance, in part for failing to object to the jury instructions on intent that he challenged on direct appeal. See *Kitchens* v. *Warden*, Superior Court, judicial district of Tolland, Docket No. TSR-CV-11-4003979-S (September 17, 2014), aff'd sub nom. *Kitchens* v. *Commissioner of Correction*, 167 Conn. App. 851, 143 A.3d 1208 (2016). The habeas court concluded, however, that the defendant's trial counsel did not act improperly when he failed to object because it was part of his trial strategy. Id. Counsel testified that his theory of defense was that the defendant had done nothing wrong, that the victim was injured by accident and that some of the claimed events on the night in question did not occur. Id. Counsel therefore focused at trial on weaknesses in the victim's testimony and her lack of credibility instead of on the intent instructions, which counsel testified had " 'no impact' " on his theory of defense. Id. He also told the habeas court that he had no concerns about the instructions, which the trial court had indicated were pattern instruc-

tions, in view of the law and theory under which he was litigating the case. See id. Thus, this court's determination in *Kitchens* that the defendant implicitly waived his claim of instructional error on intent was vindicated by trial counsel's testimony during the habeas proceeding that he had no problem with the jury instructions.[21] The concurring justices in *Kitchens*, on the other hand, would have reviewed the defendant's claim regarding the contested jury instruction without the benefit of the knowledge gained at the habeas proceeding that counsel had made a strategic choice to accept the instructions that were given.[22] See *State* v. *Kitchens*, supra, 299 Conn. 526 (*Katz, J.*, concurring); id., 551 (*Palmer, J.*, concurring).

We finally disagree with the defendant's argument that the court in *Kitchens* mislabeled forfeiture as waiver and that this court should follow federal waiver law, which provides that, in cases that do not involve invited or induced error, waiver occurs only when the challenged instruction is discussed on the record and defense counsel stipulates or specifically approves of the instruction by words or other conduct. See, e.g., *United States* v. *Polouizzi*, 564 F.3d 142, 153 (2d Cir. 2009) (claim of instructional error was waived because, "[f]aced with the parties' incompatible positions regarding the proposed definition of unlawfulness, the [D]istrict [C]ourt proposed a third option," and defendant, having been "[p]resented with this option . . . indicated that the instruction was satisfactory"); *United States* v. *Sanders*, 520 F.3d 699, 702 (7th Cir. 2008) (claim of instructional error was waived because defense counsel expressly stated that she preferred challenged aiding and abetting instruction over alternative instruction). This is similar to the argument made by Justice Katz in her concurrence in *Kitchens*. *State* v. *Kitchens*, supra, 299 Conn. 510–15, 525 (*Katz, J.*, concurring). We remain unpersuaded by this argument for three reasons.

First, waiver under *Kitchens*, which requires that counsel affirmatively express satisfaction with the instructions proposed or given, is consistent with our precedent on waiver and inconsistent with this court's understanding of forfeiture as "the failure to make the timely assertion of a right . . . ." (Internal quotation marks omitted.) *State* v. *Davis*, supra, 311 Conn. 495; accord *Mozell* v. *Commissioner of Correction*, 291 Conn. 62, 71, 967 A.2d 41 (2009).

Second, the defendant's claim that Connecticut should follow federal waiver law overlooks the fact that federal law is not monolithic and that some federal courts in recent years have adopted a view of waiver similar to that of *Kitchens*. For example, the Eleventh Circuit Court of Appeals has concluded repeatedly during the past fifteen years that defendants have waived jury instruction claims by indicating to the trial court

that the instructions were acceptable even in the absence of an on-the-record discussion of the precise instruction challenged on appeal. See *United States* v. *Carter*, 776 F.3d 1309, 1323 (11th Cir. 2015) (declining to review claim of instructional error with respect to certain counts of indictment because counsel made only one objection regarding jury instructions on those counts, which was sustained, and, therefore, defendant waived right to appeal any other previously unchallenged aspect of jury instructions concerning those counts); *United States* v. *Silvestri*, 409 F.3d 1311, 1337 (11th Cir.) ("[w]hen a party responds to a court's proposed jury instructions with the words 'the instruction is acceptable to us,' such action constitutes invited error," and, therefore, defendant affirmatively waived right to challenge instruction when his counsel told court that jury instructions " 'covered the bases' "), cert. denied, 546 U.S. 1048, 126 S. Ct. 772, 163 L. Ed. 2d 598 (2005); *United States* v. *Fulford*, 267 F.3d 1241, 1247 (11th Cir. 2001) (having stated through counsel that court's proposed supplemental instruction in response to jury question " 'is acceptable to us,' " defendant "waived his right to appeal that instruction"). Courts in the First and Second Circuits also have found waiver under similar facts. See *United States* v. *Hansen*, 434 F.3d 92, 101 (1st Cir.) (defense counsel not only failed to object to court's omission of proposed instruction, but also affirmatively stated " 'I am content' " after court instructed jury, and, therefore, claim of improper jury instruction was waived on appeal), cert. denied, 549 U.S. 894, 127 S. Ct. 203, 166 L. Ed. 2d 164 (2006); *Beastie Boys* v. *Monster Energy Co.*, 66 F. Supp. 3d 424, 451 (S.D.N.Y. 2014) ("At the charge conference, the [c]ourt invited counsel 'to comment on each page [of the draft jury instructions] on which you have an issue.' . . . Although [the defendant] raised other issues . . . it did not object to the proposed instructions . . . . To the extent [the defendant's] present argument implicitly challenges the jury instructions given at trial, it is waived." [Citations omitted.]). Accordingly, the defendant's portrayal of the rule in *Kitchens* as contrary to federal waiver law fails to acknowledge that some federal courts have begun to adopt a broader view as to the facts required to support a finding of an implied waiver.

Third, and even more significant, the defendant's argument overlooks the fact that federal waiver law is inconsistent with our jurisprudence, thus making a comparison of federal and Connecticut law extremely difficult, if not impossible. Although Connecticut and federal law both distinguish between forfeiture and waiver on the ground that "forfeiture is the failure to make the timely assertion of a right [whereas] waiver is the intentional relinquishment or abandonment of a known right"; (internal quotation marks omitted) *United States* v. *Olano*, supra, 507 U.S. 733; accord

*Mozell* v. *Commissioner of Correction,* supra, 291 Conn. 71; the practical consequences of this distinction are different under Connecticut and federal law.

Federal review of unpreserved trial errors is governed by rule 52 (b) of the Federal Rules of Criminal Procedure, which provides that "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention."[23] Rule 52 (b), however, is permissive rather than mandatory. *United States* v. *Olano*, supra, 507 U.S. 735. "If the forfeited error is 'plain' and 'affect[s] substantial rights,' the [reviewing] court . . . has authority to order correction . . . but is not required to do so." Id. Thus, "[t]he standard of 'plain error' . . . goes only to the issue of reviewability and not to the issue of whether a reversal is warranted. . . . [A]n error unobjected to at trial may be so plain as to warrant review under [r]ule 52 (b); yet the error may be harmless and, therefore, not justify a reversal." *United States* v. *Wilson*, 690 F.2d 1267, 1274 (9th Cir. 1982), cert. denied, 464 U.S. 867, 104 S. Ct. 205, 78 L. Ed. 2d 178 (1983). The exception to rule 52 (b) is when there has been a waiver of the unpreserved claim. *United States* v. *Olano*, supra, 732–33. A finding of waiver requires evidence that the defendant knowingly and voluntarily approved of the disputed instruction after an on-the-record discussion of the instruction during the trial proceedings; see, e.g., *United States* v. *Conner*, 583 F.3d 1011, 1026 (7th Cir. 2009); *United States* v. *Polouizzi*, supra, 564 F.3d 1153; or very clear evidence that the failure to object was due to tactical considerations. See, e.g., *United States* v. *Cooper*, 243 F.3d 411, 416 (7th Cir.), cert. denied, 534 U.S. 825, 122 S. Ct. 64, 151 L. Ed. 2d 31 (2001).

In contrast, Connecticut waiver law is construed more broadly than federal waiver law, and plain error review more strictly. An unpreserved constitutional claim that has not been waived under *Kitchens* may be afforded *Golding* review but is not automatically afforded plain error review, as in the federal courts. That is because the plain error doctrine in Connecticut, "codified at Practice Book § 60-5, is an extraordinary remedy used by appellate courts [only] to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party. [T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial

proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . Implicit in this very demanding standard is the notion . . . that invocation of the plain error doctrine is reserved for occasions requiring the reversal of the judgment under review. . . . [Thus, an appellant] cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." (Citations omitted; internal quotation marks omitted.) *State* v. *Myers*, 290 Conn. 278, 289, 963 A.2d 11 (2009).

In sum, federal law generally, but not always, limits waiver in jury instruction cases to a small number of cases in which the disputed instruction has been discussed on the record at trial or in which there is clear evidence in the record that the instruction was accepted by defense counsel for tactical reasons. Virtually all other jury instruction claims are considered forfeited and are subject only to plain error review. Although plain error may be found in some cases, a remedy is not mandated but, rather, is granted at the discretion of the reviewing court upon a showing that the error was clear and affected the defendant's substantial rights. In Connecticut, however, the system for reviewing unpreserved constitutional claims is more complicated. Unpreserved claims that have not been waived are not automatically reviewed under the plain error doctrine because the plain error doctrine in Connecticut, unlike under federal law, is one of reversibility rather than reviewability. In other words, plain error is reserved for the very few cases in which the alleged error is so extraordinary that automatic reversal is required, there being no need for a discretionary determination by the court regarding the imposition of a remedy. Consequently, most forfeited claims of constitutional dimension in Connecticut are reviewed under *Golding* if they have not been waived. Given these differences, the defendant's comparison of forfeited claims under state law with forfeited claims under federal law that are afforded plain error review is inappropriate because it presumes that plain error review is the same in the state and federal systems. It is not. We therefore reject the defendant's comparison of state and federal law on waiver and forfeiture as misleading and irrelevant.

We instead agree with the state that the rule in *Kitchens* improves the process of constructing fair and balanced jury instructions because it provides incentives to the parties and the court to ensure that the instructions are accurate. In contrast, allowing appellate review of any unpreserved jury instruction claim of constitutional magnitude under *Golding* gives appellate counsel unbridled freedom to raise a multiplicity of jury instruction claims that trial counsel waived for tactical reasons, as was the case in *Kitchens*. Finally, the defendant never explains why an express waiver is not sub-

ject to many of the same deficiencies attributed to an implicit waiver, such as the failure of counsel to perceive a defect in a particular instruction, even though counsel may have suggested or specifically approved of the instruction during an on-the-record charging conference. We therefore conclude that the implied waiver rule this court adopted in *Kitchens* should not be overturned.

The concurring justices disagree with the *Kitchens* waiver rule on the ground that it is too expansive and upsets the balance achieved under *Golding*. Chief Justice Rogers, who embraces an approach to waiver similar to the federal approach, is specifically concerned that habeas review is not an effective and equivalent substitute for direct appellate review of novel constitutional claims because it involves substantial delay and provides an inhospitable framework for resolving such claims. She also contends that the waiver rule has spawned an entirely new area of jurisprudence addressing whether the requirements for waiver have been met, and fears that a claim of instructional error deemed waived under *Kitchens* will be raised anew in a habeas proceeding. We disagree.

With respect to her first concern, Chief Justice Rogers overlooks our express determination in this case to "leave the merits and a full discussion of this argument for another day, when such a claim is presented to this court on direct appeal." Footnote 22 of this opinion. As for her contention that the waiver rule in *Kitchens* has created an entirely new area of jurisprudence, there is no evidence to support this claim. *Kitchens* is only one in a long line of cases over the course of several decades in which Connecticut courts have considered implied waiver in the context of jury instruction claims. See *State* v. *Kitchens*, supra, 299 Conn. 470–72 (citing more than fifteen years of precedent addressing implied waiver of jury instruction claims). Thus, clarification of Connecticut's waiver law in *Kitchens* has not resulted, nor will it result, in an entirely new area of jurisprudence. Reviewing courts always have been required to examine the specific facts and circumstances of each case to determine whether waiver occurred. The only difference between past and future waiver cases is that the rule is more specific under *Kitchens* with respect to jury instructions because it incorporates the requirements of the rules of practice. It is therefore unlikely that courts will spend more time addressing waiver claims in the post-*Kitchens* era. Rather, courts are likely to spend less time reviewing such claims because *Kitchens* narrowed the concept of waiver by specifying the conditions under which waiver may be found and precluding waiver solely on the ground that counsel generally agreed with the proposed instructions. This will potentially result in more accurate jury instructions and fewer waiver claims for reviewing courts to consider. Indeed, Chief Justice Rog-

ers concedes that the rule in *Kitchens* has resulted in a reduction in the number of direct appeals substantively addressing claims of instructional error. Not surprisingly, an examination of habeas cases decided in the post-*Kitchens* era also reveals that very few defendants have filed petitions alleging ineffective assistance of trial counsel on the ground that counsel implicitly waived a jury instruction claim under *Kitchens*. See, e.g., *Kitchens* v. *Warden*, supra, Superior Court, Docket No. TSR-CV-11-4003979-S; *Bharrat* v. *Commissioner of Correction*, Superior Court, judicial district of Tolland, Docket No. TSR-CV-12-4004615-S (August 27, 2014), appeal dismissed, 167 Conn. App. 158, 143 A.3d 1106 (2016). Moreover, the petitions in those cases also contained claims of error unrelated to *Kitchens*. Chief Justice Rogers' concern that *Kitchens* will result in an entirely new area of jurisprudence and a greater workload for Connecticut courts is thus unwarranted.

Finally, to the extent Chief Justice Rogers prefers the federal approach to determining whether a jury instruction claim has been waived, we point to the imbalance that would result from attempting to combine federal and state waiver law. Although federal waiver law permits the review of a greater number of claims than would be permissible under state law because more federal claims are deemed forfeited, and thus reviewable, than would be deemed reviewable under *Kitchens*, the ultimate remedy under the federal plain error doctrine is more difficult to obtain than the remedy available under *Golding* that Chief Justice Rogers recommends. That is because the federal remedy for plain error is discretionary, whereas the remedy under *Golding* is automatic reversal of the judgment if the four-pronged test of *Golding* is satisfied. Accordingly, permitting Connecticut courts to review a greater number of claims by following federal forfeiture law in the absence of a state remedy comparable to the stringent federal plain error remedy for determining whether claims succeed opens the door to the abuses that *Golding* review was intended to discourage, such as trial by ambuscade. See, e.g., *Moye* v. *Commissioner of Correction*, 316 Conn. 779, 784–85, 114 A.3d 925 (2015). Adoption of the federal standard on forfeiture to determine whether jury instruction claims may be reviewed, as Chief Justice Rogers suggests, also would result in two different waiver standards for determining whether unpreserved claims may be reviewed, one standard for reviewing jury instruction claims and another standard for reviewing other unpreserved claims, which would lead to confusion and unnecessary inconsistency in our waiver law.

We turn next to Justice Palmer's concurring opinion, in which he also argues that the waiver rule in *Kitchens* should be overturned. We reject his lengthy analysis in all respects because, among other things, it is based in part on the construction of a false dichotomy between

the reasoning in *Kitchens* and the present case, and on an incorrect understanding of how the court in *Kitchens* used the term "acquiescence" when discussing the state's claims and Connecticut's prior waiver law. We also reject Justice Palmer's approach to waiver, which is far more extreme than the federal approach and, to our knowledge, has not been adopted by any other jurisdiction. Indeed, the approach he suggests would have the effect of virtually eliminating Connecticut's implied waiver doctrine in the context of jury instruction claims. We address each point in turn.

Justice Palmer initially contends that the implied waiver rule in *Kitchens* was predicated on the legal fiction, or presumption, "that a defense counsel who reviews and then acquiesces in the trial court's proposed instructions has considered and declined to raise every potential objection to every part of the instructions" but that we have "disavowed" this rationale and now justify the rule on the ground that "defense counsel, upon reviewing the trial court's proposed jury charge, knowingly and voluntarily waives her client's procedural right to later challenge those instructions on appeal." This is simply untrue. There is no difference in the reasoning articulated in *Kitchens* and the present case.

Justice Palmer constructs a false dichotomy lacking any basis in fact. The court in *Kitchens* repeatedly explained, as we do in the present case, that waiver involves the "intentional relinquishment or abandonment of a known right or privilege"; (internal quotation marks omitted) *State* v. *Kitchens*, supra, 299 Conn. 469; accord id., 474; and that, "among the rights that may be waived by the action of counsel in a criminal proceeding is the right of a defendant to proper jury instructions." Id., 467. The court in *Kitchens* also described the state's argument as whether the defense had "waived or forfeited the right to challenge [the jury instructions] on appeal"; id., 473; ultimately concluding that, if the criteria for the *Kitchens* waiver rule are satisfied, "the defendant may be deemed to have knowledge of any potential flaws [in the jury instructions] and to have waived implicitly the constitutional right to challenge the instructions on direct appeal." Id., 483. Thereafter, the court in *Kitchens* similarly acknowledged that "implied waiver, as alleged in [that] case, arises from an inference that the defendant knowingly and voluntarily relinquished the right in question"; (emphasis omitted) id.; and that competent counsel is presumed, "when determining whether a defendant's waiver of a constitutional right or statutory privilege has been knowing and intelligent." Id., 489. Insofar as the court in *Kitchens* also stated in a footnote that counsel's acceptance of the jury instructions following sufficient notice of their content supports an inference that counsel had knowledge of all potential constitutional defects contained therein; id., 487 n.25; that statement was intended to

explain in part why waiver constitutes a knowing and voluntary relinquishment of the right to appeal a jury instruction claim. Accordingly, there is no basis for Justice Palmer's argument that our reasoning in the present case differs on this essential point from the reasoning in *Kitchens*.

Justice Palmer also argues that the court in *Kitchens* failed to provide clear guidance as to what constitutes implied waiver, in part because the court used the term "acquiescence" in a "misleading and inconsistent manner." He contends that "*Kitchens* described as acquiescence everything from defense counsel's sitting silently by and failing to object to the court's jury charge to defense counsel's expression of affirmative satisfaction or agreement with the charge," and that the result of this inconsistency is confusion and a lack of understanding as to the type of conduct that may lead to a finding of waiver. Justice Palmer also claims that the court in *Kitchens* and the majority opinion in the present case have indicated that "mere acquiescence" constitutes waiver, which entails passive acceptance. This is not the case.

Justice Palmer continues to misunderstand the reasoning in *Kitchens* and the present case. The court in *Kitchens* did not use the term "acquiescence" when articulating the modified waiver rule but described implied waiver as requiring, among other things, counsel's "affirmative acceptance" of the instructions that were given.[24] *State* v. *Kitchens*, supra, 299 Conn. 484, 496; see also id., 482–83. The court in *Kitchens* also expressly cautioned that "mere acquiescence" is not sufficient to establish waiver.[25] Id., 483 n.23. As we explain in this opinion and in *Kitchens*, "mere acquiescence" is insufficient to establish waiver because a finding of waiver requires that all of the facts and circumstances be taken into account, including "whether counsel had been given a meaningful opportunity to review, comment on and express satisfaction with the instructions, [and] whether counsel had, in fact, expressed such satisfaction before or after the instructions were given." Id. Justice Palmer's fixation on the court's occasional use of the term "acquiescence" in *Kitchens* when describing the state's arguments and the decisions of other jurisdictions discussing waiver claims, and his suggestion that *Kitchens* intended waiver to be found only when there is mere acquiescence with respect to the court's proposed instructions, is thus unjustified. To the extent Justice Palmer's concern may stem from the fact that neither *Kitchens* nor this opinion precisely defines the meaning of "affirmative acceptance," we determined in *Kitchens* that whether counsel has satisfied this requirement is best left to the discretion of the reviewing court after examining the record before it. Moreover, we are not aware of any case in which a reviewing court has construed "affirmative acceptance" as meaning passive

acquiescence. See, e.g., *State* v. *Johnson*, 316 Conn. 45, 53, 111 A.3d 436 (2015) (affirmative acceptance means counsel must express satisfaction with instruction, not merely acquiesce in it); *State* v. *Webster*, 308 Conn. 43, 63, 60 A.3d 259 (2013) (finding waiver in part because court solicited comments from counsel several times during and following charging conference, and counsel ultimately affirmatively accepted instructions proposed and given). In sum, nothing in *Kitchens* or this opinion supports Justice Palmer's suggestion that *Kitchens* endorsed a definition of implied waiver that requires no more than passive acceptance of the jury instructions without actually agreeing to them, and his preoccupation with the court's reference to "acquiescence" in *Kitchens* when describing the state's argument and how other courts have understood waiver in the past is irrelevant.

Justice Palmer also argues that *Kitchens* should be overruled under the doctrine of stare decisis. We disagree with this argument because we have concluded that *Kitchens* was correctly decided. We thus need not address this issue any further.

In explaining his own view as to when implied waiver should be found, Justice Palmer resurrects his argument in *Kitchens* that "an unpreserved claim that instructional error of constitutional magnitude has occurred should be unreviewable under *Golding* only when (1) defense counsel induced or invited the error, or (2) it clearly can be inferred that counsel—or the defendant—actually was aware of the alleged defect in the instruction but chose for strategic or other reasons not to object (true waiver)."[26] Given his critique of *Kitchens* and his apparent willingness to accept the concept of implied waiver, even though narrowly drawn, this standard makes no sense for two reasons.

First, the unavailability of *Golding* review in cases of induced or invited error is based on exactly the same presumption, or "legal fiction," Justice Palmer rejects as "illogical," "unfounded" and "implausible" in the context of implied waiver under *Kitchens*. The presumption is that the claim is unreviewable because the defendant had knowledge of any potential flaws in the instructions that were given but intentionally disregarded them for strategic reasons. *State* v. *Kitchens*, supra, 299 Conn. 470 ("[t]he rationale for declining to review jury instruction claims when the instructional error was induced or the claim was implicitly waived is precisely the same: [t]o allow [a] defendant to seek reversal [after] . . . his trial strategy has failed would amount to allowing him to [induce potentially harmful error and then] . . . ambush the state [and the trial court] with that claim on appeal" [internal quotation marks omitted]); accord *State* v. *Fabricatore*, 281 Conn. 469, 482, 915 A.2d 872 (2007); *State* v. *Gibson*, 270 Conn. 55, 67, 850 A.2d 1040 (2004); *State* v. *Cruz*, 269 Conn. 97, 106, 848 A.2d 445

(2004). In neither circumstance is the record required to show that the defendant was actually aware of the specific instructional error that is claimed on appeal. Accordingly, Justice Palmer's unwillingness to allow *Golding* review in cases of induced or invited error is at odds with his willingness to allow *Golding* review of claimed error that has been implicitly waived under *Kitchens*.

Second, Justice Palmer's definition of implied waiver, which would limit waiver to cases in which "it clearly can be inferred that counsel—or the defendant—actually was aware of the alleged defect in the instruction but chose for strategic or other reasons not to object (true waiver)," is so narrow that it abolishes, for all intents and purposes, the implied waiver doctrine in Connecticut in the context of jury instruction claims. In *Kitchens*, the court responded to this same, now recycled argument by observing that the concept of implied waiver under Justice Palmer's definition very likely would be "eviscerate[d]" because "there appears to be no way that counsel may clearly demonstrate such knowledge except by expressly informing the court."[27] *State* v. *Kitchens*, supra, 299 Conn. 485 n.25. It also bears repeating that Justice Palmer was the author of the majority opinion in *State* v. *Holness*, supra, 289 Conn. 535, in which the court concluded that the defendant had waived his unpreserved jury instruction claim when defense counsel expressed satisfaction with the contested instruction because the state was not required to establish that counsel was aware of the potential constitutional flaw. See id., 543–44. Rather, the court in *Holness* stated that the trial court was entitled to presume that counsel was familiar with the relevant constitutional principles and had acted competently in agreeing to the jury instruction challenged on appeal. See id., 544. Justice Palmer's present views thus are inconsistent with the position he articulated as the author of the majority opinion in *Holness*.

We conclude with the observation that Justice Palmer, in his enthusiasm to overturn the waiver rule in *Kitchens*, makes many other points that are either unsupported or supported by irrelevant sources to which he cites. For example, he declares that incarcerated defendants will suffer unnecessarily under *Kitchens* as a result of having to litigate their jury instruction claims in habeas proceedings and proclaims that Juma Lahai, the petitioner in *Lahai* v. *Warden*, Superior Court, judicial district of Tolland, Docket No. TSR-CV-09-4003028-S (May 7, 2012), "remained incarcerated for a full year longer than was necessary to review and vindicate his [*Kitchens*] claim." Text accompanying footnote 41 of Justice Palmer's concurring opinion. A quick check of the facts, however, reveals that Justice Palmer is mistaken. In *State* v. *Lahai*, 128 Conn. App. 448, 18 A.3d 630, cert. denied, 301 Conn. 934, 23 A.3d 727 (2011), the Appellate Court rejected Lahai's jury

instruction claim because the error was induced by defense counsel, who specifically requested the instruction that was given. See id., 457. The court cited *Kitchens* only for its passing reference to the doctrine of induced error, and not for its clarification of the implied waiver rule. See id. Thereafter, the habeas court noted that both parties had conceded that the error was induced when it concluded that the error was prejudicial under the second prong of *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). See *Lahai* v. *Warden*, supra. Accordingly, the parties in *Lahai* did not rely on *Kitchens*, and Justice Palmer's citation to *Lahai* in describing the purportedly deleterious effects of *Kitchens* is unsupported by the history of that case.[28]

Justice Palmer makes a similar mistake when claiming that the concept of waiver should be narrowly drawn so as not to unduly limit *Golding* review. He cites *State* v. *Pond*, 315 Conn. 451, 108 A.3d 1083 (2015), as a case in which this court was able to clarify the law and resolve a split of opinion in the Appellate Court after "the state argued unsuccessfully that the instructional claims of the defendant . . . were waived under *Kitchens* . . . ." Text accompanying footnote 28 of Justice Palmer's concurring opinion. The state, however, did not argue in *Pond* that the claims were waived under *Kitchens*. To the extent the Appellate Court in *Pond* considered instructional error before the case was appealed to this court, the issue was whether the defendant had induced the instructional error, not whether he had waived his claim of instructional error under *Kitchens*. See *State* v. *Pond*, 138 Conn. App. 228, 238, 50 A.3d 950 (2012), aff'd, 315 Conn. 451, 108 A.3d 1083 (2015). Thus, *Kitchens* was cited only for its reference to the doctrine of induced error. See id. In fact, the Appellate Court specifically observed that "[t]he state does not appear to rely on the waiver doctrine of [*Kitchens*]."[29] Id., 238 n.7.

Justice Palmer further declares that, "with five years now having passed since this court decided *Kitchens*, time and experience have borne out my concerns, and those of Justice Katz, that the majority's reliance on habeas proceedings as a panacea was seriously misplaced. When *Kitchens* was decided, we predicted that the rule would increase rather than decrease the burden on judicial resources because any time saved in avoiding appellate review of instructional error would be more than offset by the need for a full habeas trial on the issue. In fact, of the six cases decided in the year following this court's decision in *Kitchens* in which the Appellate Court found claims of instructional error waived under *Kitchens*, four already have resulted in habeas petitions related to the alleged instructional error.[30]

"When *Kitchens* was decided, we also warned that

habeas proceedings would only push back the inevitable, as petitioners whose ineffective assistance of counsel claims were denied on collateral review ultimately would return to the Appellate Court for review of those decisions. Sure enough, the first generation of post-*Kitchens* habeas appeals is now coming home to roost. See, e.g., *Bharrat* v. *Commissioner of Correction*, 167 Conn. App. 158, 143 A.3d 1106 (2016)." (Footnotes altered.) Justice Palmer thus suggests an impending flood of new habeas litigation based on *Kitchens*. We nonetheless ask, what, exactly, is coming home to roost?

Justice Palmer cites four habeas cases during the past five years in which a *Kitchens* claim was purportedly raised. Four cases in five years, however, can hardly be regarded as an intolerable consequence of *Kitchens*. Moreover, none of the cited cases is relevant because the rule in *Kitchens* was either not raised or only one of several issues raised by the petitioner. In *Carrion* v. *Warden*, Superior Court, judicial district of Tolland, Docket No. TSR-CV-11-4004163-S (December 15, 2015), for example, the petitioner, Christopher Carrion, asserted three claims of error, only one of which was a claim of ineffective assistance based on instructional impropriety.[31] Furthermore, the habeas court in *Carrion* did not consider trial counsel's conduct under the performance prong (first prong) of *Strickland*. See id.; see also *Strickland* v. *Washington*, supra, 466 U.S. 687. This court previously had concluded, in a majority opinion authored by Justice Palmer, that, even if it assumed, without deciding, that Carrion's claim of instructional impropriety had not been implicitly waived under *Kitchens*, the challenged instruction had not deprived Carrion of a fair trial. *State* v. *Carrion*, 313 Conn. 823, 827, 100 A.3d 361 (2014). The habeas court in *Carrion* thus disposed of the *Kitchens* claim in a single sentence, noting this court's conclusion that the instruction was not harmful and stating that "the issue as to this jury instruction is res judicata . . . ." (Emphasis omitted.) *Carrion* v. *Warden*, supra. Carrion is now appealing from the judgment denying his habeas petition to the Appellate Court but has raised no jury instruction claim. *Carrion* v. *Commissioner of Correction*, Connecticut Appellate Court, Docket No. AC 38794 (appeal filed January 15, 2016). Accordingly, there is no basis for Justice Palmer's conclusion that *Carrion* is the first of many "post-*Kitchens* habeas appeals . . . coming home to roost." To the contrary, instructional error in *Carrion* was only a minor part of Carrion's ineffective assistance of counsel claim and is not being litigated in the appeal from the habeas court's judgment.

As for the other three cases that Justice Palmer cites, the court determined in *Lahai* v. *Warden*, supra, Superior Court, Docket No. TSR-CV-09-4003028-S, that the instructional error had been induced; and no *Kitchens* claim was raised in *Myers* v. *Warden*, Superior Court,

judicial district of Tolland, Docket No. TSR-CV-14-4005938-S (withdrawn August 12, 2016), or in the habeas proceeding and appeal that followed in *Bharrat*. See generally *Bharrat* v. *Commissioner of Correction*, supra, 167 Conn. App. 158; *Bharrat* v. *Commissioner of Correction*, supra, Superior Court, Docket No. TSR-CV-12-4004615-S. Consequently, Justice Palmer provides no reliable support for his claim that a large amount of habeas litigation will be coming home to roost in the post-*Kitchens* era.

Justice Palmer finally suggests, as he did in *Kitchens*, that the waiver of a jury instruction claim under *Kitchens* may be overcome if defense counsel informs the trial court that he has not raised a constitutional challenge to the charge because he is unaware of any such claim. See *State* v. *Kitchens*, supra, 299 Conn. 541 (*Palmer*, *J.*, concurring). He also suggests that the defense bar should test this theory. We reject these suggestions not only for the reasons stated in *Kitchens*; see id., 485 n.25; but for the additional reason that such conduct would be inconsistent with our rules of practice, which seek to encourage good faith participation by counsel in the formulation of jury instructions. Qualified approval of the jury instructions, as Justice Palmer suggests, also would effectively limit waiver in this context to claims of induced or invited error.

The judgment of the Appellate Court is affirmed.

In this opinion EVELEIGH, ESPINOSA and ROBINSON, Js., concurred.

[1] The court granted certification on the following issue: "Did the Appellate Court properly determine that the defendant's unpreserved instructional claim had been waived under [*Kitchens*]?" *State* v. *Bellamy*, 312 Conn. 914, 93 A.3d 597 (2014).

[2] On November 18, 2015, after oral argument had been scheduled, we ordered the parties to file supplemental briefs on the following issue: "Should this court overrule [*Kitchens*] and permit review of unpreserved claims of instructional error that meet the reviewability requirements of *State* v. *Golding*, 213 Conn. 233, 239–40 [567 A.2d 823] (1989), unless the error was induced or the claim was expressly waived by the party raising the claim on appeal?"

[3] Although we ordinarily would consider the defendant's waiver claim only after a determination that it was of constitutional magnitude under the second prong of *State* v. *Golding*, 213 Conn. 233, 239, 567 A.2d 823 (1989), the state acknowledged in its brief to this court that the issue of whether the claim was constitutional was "briefed . . . but not addressed by the Appellate Court." The state further acknowledged that the grant of certification to appeal to this court did not include consideration of the constitutional issue. Accordingly, the state's argument with respect to waiver, our analysis of the defendant's waiver claim and our reconsideration of the rule in *Kitchens* are all based on a presumption that the defendant's claim is of constitutional magnitude, as that issue has not been raised or briefed in this court.

[4] The court initially charged that the jury, in deciding whether to believe all, some or none of a witness' testimony, should consider a number of factors, including: (1) "Was the witness able to see, hear and know the things about which the witness testified?" (2) "How well was the witness able to recall and describe those things?" (3) "What was the witness' manner and demeanor while testifying?" (4) "Did the witness have any interest in the outcome of this case or any bias or prejudice concerning any party or any matter involved in the case?" (5) "How reasonable was the witness' testimony considered in light of all of the evidence in the case?" (6) "Was the witness' testimony contradicted by what that witness has said or done

at another time or by the testimony of other witnesses or other evidence."

[5] The court subsequently instructed: "Identity is an issue in every criminal case. An element of each offense is the identity of the perpetrator. The state must prove to you beyond a reasonable doubt that this defendant was the individual who committed the crimes that the jury considers. Therefore, the burden in this case is on the prosecution to prove beyond a reasonable doubt not only that the crimes charge[d] were committed but also that the defendant was the person who committed the crime[s]. If the state does not prove the identity of the defendant as the perpetrator beyond a reasonable doubt [with respect to] any of the offenses charged, you must find him not guilty of the offense[s]. You must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant before you convict him. It is your duty to recall and weigh and consider all of the evidence relating to the identification of the defendant. You should consider the opportunity the witness had to observe the defendant, the degree of certainty of the identification made by the witness, whether the witness knew the defendant before the identification [and] any other circumstances that you think are relevant to the issue of identification of the defendant."

[6] The defendant initially appealed to this court, which transferred the appeal to the Appellate Court.

[7] In *Golding*, we stated a defendant may prevail on an unpreserved claim when: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Footnote omitted.) *State* v. *Golding*, supra, 213 Conn. 239–40; see also *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015) (modifying third prong of *Golding* by eliminating word "clearly" before "exists" and "deprived").

[8] "A defendant in a criminal prosecution may waive one or more of his or her fundamental rights. . . . [I]n the usual *Golding* situation, the defendant raises a claim on appeal [that], while not preserved at trial, at least was not waived at trial. . . . [A] constitutional claim that has been waived does not satisfy the third prong of the *Golding* test because, in such circumstances, we simply cannot conclude that injustice [has been] done to either party . . . or that the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Kitchens*, supra, 299 Conn. 467.

[9] The defendant repeatedly states that the court in *Kitchens* deemed a lack of assertion of a right, or silence, to constitute a waiver. This is incorrect. The court in *Kitchens* emphasized that waiver "involves the idea of assent"; (internal quotation marks omitted) *State* v. *Kitchens*, supra, 299 Conn. 469; and that implied waiver occurs when counsel "affirmatively accepts the instructions proposed or given . . . ." Id., 483. Accordingly, to the extent the defendant equates the waiver rule articulated in *Kitchens* with forfeiture, or "the failure to make the timely assertion of a right"; (internal quotation marks omitted) id., 474; he mischaracterizes the rule, just as Justice Katz mischaracterized the rule in her concurring opinion in *Kitchens*. Id., 500–501 (*Katz J.*, concurring) (stating that waiver rule improperly "lend[s] credence to a wholly novel system of categorizing unpreserved trial errors under which, essentially, a defendant will be deemed to have waived *Golding* review of an instructional claim *merely by participating in a charging conference and failing to object to jury instructions proposed by the court or the state*" [emphasis added]).

[10] There was no claim in *Coleman* that the defendant did not have a meaningful opportunity to review the trial court's jury instructions. See *State* v. *Coleman*, supra, 304 Conn. 170 n.3.

[11] In their supplemental briefs, both the defendant and the state ask this court to take judicial notice of the appeal in *State* v. *Herring*, 323 Conn. 526,     A.3d     (2016), and to adopt the arguments made by the parties and the amicus curiae in that case, in which the issue of whether the waiver rule in *Kitchens* should be overturned is also raised.

[12] To the extent the defendant argues that the court in *Kitchens* "deemed a lack of assertion of a right, or silence, to be waiver," or that *Kitchens* "presum[ed] waiver from inaction," it misreads our holding in *Kitchens*.

[13] In *Brewer*, the trial court instructed the jury that it must unanimously find the defendant not guilty of the murder charge before it could consider the lesser included offense of manslaughter, which the defendant later challenged on appeal. *State* v. *Brewer*, supra, 283 Conn. 353. There was no

evidence in the record, however, that defense counsel in *Brewer* supplied, affirmatively requested or advocated for the specific unanimity language that the defendant challenged on appeal, even though counsel had sought the lesser included offense instruction. See id., 357 n.7. Thus, the court in *Brewer* did not characterize defense counsel's failure to preserve the claim pertaining to the unanimity language as induced or invited error. Rather, the court treated counsel's failure to object to this language as a waiver because counsel "specifically expressed his satisfaction with the [lesser included offense] instruction when queried by the trial court." Id., 361. We add that, to the extent the court in *State* v. *Ebron*, 292 Conn. 656, 681–82, 975 A.2d 17 (2009), overruled in part by *State* v. *Kitchens*, 299 Conn. 447, 10 A.3d 942 (2011), described the claim in *Brewer* as one of induced error, its description was incorrect.

[14] We also noted that, "in circumstances in which defense counsel's waiver of a constitutional claim cannot be justified, that is, when the waiver constitutes a violation of the defendant's right to the effective assistance of counsel, the defendant may seek recourse through habeas corpus proceedings. Such proceedings are available to safeguard the constitutional rights of any defendant who has been prejudiced by the ineffective assistance of his or her attorney." *State* v. *Holness*, supra, 289 Conn. 544 n.8.

[15] Chief Justice Rogers contends that "a broad waiver of claims of instructional error" is not analogous to the abandonment of claims that might have been made in connection with a waiver of other constitutional rights, such as the right to trial, to counsel or to a probable cause hearing, because a criminal defendant who waives such rights "consciously chooses to relinquish claims, known or unknown, in exchange for something he or she values—a favorable plea, the right to self-representation or a strategic advantage, respectively." Footnote 15 of Chief Justice Rogers' concurring opinion. We disagree. There is no such "exchange" because waiver of the foregoing rights is within the complete control of the defendant. Even if the waivers are viewed as involving a so-called "exchange," however, the gains to which Chief Justice Rogers refers do not necessarily have any clear practical value. Waiving the right to trial counsel, for example, does not provide defendants who have no knowledge of the law or legal experience with any obvious benefit other than the satisfaction of self-representation, despite the newly acquired ability to control trial strategy. In contrast, criminal defendants who waive a claim of instructional error are still able to utilize the wide array of procedural tools available to ensure that the jury instructions are correct. As discussed in this opinion, these tools include the rules of practice, which provide defendants and their counsel with numerous opportunities to participate in the formulation of the jury instructions throughout the proceedings. Chief Justice Rogers specifically recognizes this benefit when she states: "[T]here are features unique to jury instructions that justify holding counsel to a higher standard of accountability for failing to preserve claims of error. . . . Specifically, jury instructions are carefully formulated outside of the rush of trial pursuant to the rules of practice that afford counsel a large degree of participation in a structured process. The purpose of these rules is to detect error at the earliest possible juncture, and the threat of an implied waiver of an instructional claim on appeal, at least in narrowly defined circumstances, provides an appropriate incentive for the opportunity to be taken seriously." Footnote 16 of Chief Justice Rogers' concurring opinion. She adds, and we agree, that "[t]he detection of error at trial, without the necessity of an appeal, is the most desirable outcome for purposes of both fairness to defendants and the efficient operation of the court system." Id. We finally note that a criminal defendant who waives the right to trial, to counsel or to a probable cause hearing, like a defendant who waives the right to challenge a jury instruction, still waives all of the potential claims that he might have been entitled to bring if the right had not been waived. Accordingly, the waiver of a claim of instructional error is analogous to the waiver of other constitutional rights.

[16] In her concurring opinion in *Kitchens*, Justice Katz noted that, from January 1, 2000, to May 5, 2010, this court considered approximately seventy criminal appeals in which a defendant requested *Golding* review of instructional error and found reversible error in only six cases. *State* v. *Kitchens*, supra, 299 Conn. 522 n.17 (*Katz, J.*, concurring). During that same period, the Appellate Court considered approximately 250 criminal appeals in which a defendant requested *Golding* review of instructional error and found reversible error in only seventeen cases. Id.

[17] In a separate but related argument, the defendant contends that the waiver rule in *Kitchens* should be overturned because it has resulted in conflicting and confusing decisions by reviewing courts as to what consti-

tutes a " 'meaningful opportunity' " to review the instructions and what constitutes an " 'adequate record' " to support waiver. The defendant also argues that the waiver rule is inconsistent with the goals of "efficient appellate administration" and "the correction of manifest injustice." We disagree.

As previously discussed, waiver decisions cannot be compared on the basis of a single factor, as the defendant attempts to do in his argument to this court. Rather, it is the combination of facts and circumstances in each individual case that must be considered. For example, the amount of time deemed sufficient to constitute a meaningful opportunity to review the jury instructions depends on factors such as the length and complexity of both the trial and the instructions, which will very likely differ in each case. Thus, direct comparisons between cases simply cannot be made. Compare *State* v. *Lavigne*, 307 Conn. 592, 598 n.4, 57 A.3d 332 (2012) (concluding that opportunity to review extremely lengthy instructions ninety minutes before charging conference and then overnight did not constitute meaningful opportunity for review because of length and complexity of trial and counsel's need to use overnight time to prepare for closing argument), with *State* v. *Lee*, 138 Conn. App. 420, 453–54, 52 A.3d 736 (2012) (concluding that opportunity to review instructions two hours before charging conference and overnight constituted meaningful opportunity for review because counsel raised no concerns following day when queried by court), cert. granted, 321 Conn. 911, 136 A.3d 644 (2016). This does not lead to confusion, as the defendant suggests, but simply means that courts must conduct a holistic evaluation in every case, and counsel must use common sense in determining how to respond to the court's proposed instructions.

The defendant's corresponding argument that our law provides no guidance as to what constitutes an " 'adequate record' " to find waiver under *Kitchens* is likewise lacking in merit. In arguing that our case law is confusing on this issue, the defendant cites to three cases in which waiver was found and two cases in which waiver was not found, even though there was no marked copy of the trial court's proposed jury instructions in the record of any of the cases. In the three cases in which waiver was found, however, the record contained evidence not present in the other two cases, indicating that defense counsel had knowledge of the proposed jury instructions and a meaningful opportunity to review them. Compare *State* v. *Bialowas*, 160 Conn. App. 417, 427 n.7, 428, 125 A.3d 642 (2015) (although record contained no copy of court's proposed charge but only final amended version of instructions given to jury, defense counsel waived instructional claim because record showed that counsel received court's proposed charge three days before charge was given, court asked counsel prior to delivery of closing arguments whether he had " '[a]nything else' " to state on record with regard to off-the-record charging conference, and counsel responded, " 'I don't think so, Your Honor' "), and *State* v. *Osbourne*, 138 Conn. App. 518, 543, 53 A.3d 284 ("[Defense counsel waived objection to the instruction as given because] [a]lthough the record does not reflect whether the court provided counsel with a written copy of its charge before it was given to the jury, the court held a charge conference before instructing the jury, and it is discernible from the record that the court's instructions to the jury were consistent with the instructions as discussed during the charge conference. [Defense counsel] did not object . . . [or] take exception . . . to the court's initial instruction, or to either of the court's subsequent reiterations of that instruction; nor did [defense counsel] object to the transcription of its instruction being provided to the jury. Because the court instructed on the interfering charge three times and then submitted a written copy of the instruction to the jury, it is reasonable to infer that defense counsel had knowledge of any potential flaws in the court's instruction, yet he failed to raise any claims regarding those flaws before the trial court."), cert. denied, 307 Conn. 937, 56 A.3d 716 (2012), and *State* v. *Bharrat*, 129 Conn. App. 1, 17 and n.9, 18–19, 20 A.3d 9 (although record contained no copies of instructions circulated by court on two different occasions, defendant did not dispute state's assertion that jury instructions in circulated copies encompassed same instructions that court ultimately delivered, and, therefore, claim was waived because record reflected that court distributed copies of final charge to parties, summarized on record its recollection of charging conferences held with parties, informed counsel it would give more time to check instructions for potential errors, asked thereafter if counsel had " 'any addition, summation, disagreements, additions, [or] subtractions' " from court's summary of charging conference, and, following jury charge, asked for further comments, to which defense counsel replied in negative), cert. denied, 302 Conn. 905, 23 A.3d 1243 (2011), with *State* v. *Davis*, supra, 311 Conn. 479, 481 (defense counsel did not waive instructional claim because court did not provide counsel with precise content of proposed instructions, as "the only discussion of the jury instructions, prior to the delivery of the charge to the jury, was limited to the state's proposed charge, which defense counsel

stated he had not read, and [to] ambiguous references to the [standard criminal jury] instructions on the Judicial Branch website" that court stated it would deliver " 'in essence, maybe not exactly' "), and *State* v. *Devalda*, supra, 306 Conn. 505 n.15 (instructional claim was not waived because record surrounding discussion of charging conference failed to indicate when or whether defense received written copy of proposed jury instructions).

[18] The defendant's suggestion that a state's attorney who spots an error might deliberately ignore it, "secure in the knowledge that [a] *Kitchens* waiver will bar review of that error on appeal," reflects a cynical view that we reject.

[19] Evidence that jury instructions are likely to be more carefully crafted in light of *Kitchens* is provided by *State* v. *Herring*, 323 Conn. 526,       A.3d      (2016), a companion case in which the trial court, nearly ten months following the release of our decision in *Kitchens*, held an on-the-record charging conference during which it examined the proposed instructions page by page and queried the parties as to whether they had any objection to the instructions on each page.

[20] The defendant contends that "[a] habeas action costs the system money, time, and resources. A public defender or assigned counsel is likely needed, both at trial and on appeal. Judges, state's attorneys, and judicial staff are required for trial and appeal. An appellate judge who [finds a] *Kitchens* waiver during the direct appeal may, a few years later, be presented with the same issue in the habeas appeal."

[21] Trial counsel's testimony at the habeas proceedings in *Kitchens* also refutes the defendant's suggestion in the present case that counsel would never implicitly waive jury instruction claims as a matter of trial strategy. Counsel may have perfectly legitimate reasons, as he did in *Kitchens*, to create a theory of defense that not only does not involve the issue raised in the jury instruction claim on appeal, but would be weakened by a jury instruction request inconsistent with the chosen theory.

[22] To the extent the defendant claims that habeas review does not eliminate the unfairness of finding implied waiver in cases in which counsel challenges an aspect of settled law on direct appeal that was not challenged in the trial proceedings, we note that the defendant is in the same position as all other defendants to whom the law has applied in the past. Moreover, there is nothing to prevent trial counsel from challenging settled law in the trial proceedings, thereby preserving the claim for appellate review. See *State* v. *Brewer*, supra, 283 Conn. 361 n.11 (futility is no excuse for failing to preserve challenge to jury instructions that comply with precedent). We nonetheless leave the merits and a full discussion of this argument for another day, when such a claim is presented to this court on direct appeal. We also decline to address the parties' arguments regarding the effect of *Kitchens* on plain error review because it is the subject of a pending appeal before this court. See *State* v. *McClain*, 319 Conn. 902, 122 A.3d 637 (2015) (granting certification to review issue of whether "the Appellate Court properly determine[d] that an implied waiver of a claim of instructional error that satisfies [*Kitchens*] also forecloses plain error review" [citation omitted]).

[23] The following test is applied to determine whether a claim of unpreserved error may be reviewed under rule 52 (b) of the Federal Rules of Criminal Procedure. "First, there must be an error or defect—some sort of [d]eviation from a legal rule—that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. . . . Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. . . . Third, the error must have affected the appellant's substantial rights . . . . Fourth . . . if the above three prongs are satisfied, the [reviewing] court . . . has the discretion to remedy the error—discretion which ought to be exercised only if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Puckett* v. *United States*, 556 U.S. 129, 135, 129 S. Ct. 1423, 173 L. Ed. 2d 266 (2009), quoting *United States* v. *Olano*, supra, 507 U.S. 732–34, 736.

[24] The court stated: "We conclude that, when the trial court provides counsel with a copy of the proposed jury instructions, allows a meaningful opportunity for their review, solicits comments from counsel regarding changes or modifications and counsel affirmatively accepts the instructions proposed or given, the defendant may be deemed to have knowledge of any potential flaws therein and to have waived implicitly the constitutional right to challenge the instructions on direct appeal. Such a determination by the reviewing court must be based on a close examination of the record and the particular facts and circumstances of each case." *State* v. *Kitchens*,

supra, 299 Conn. 482–83.

[25] The court stated: "The standard that we describe would not allow waiver to be presumed from a silent record or from defense counsel's mere acquiescence in, or failure to object to, the jury instructions. A silent record, by definition, would not satisfy the standard because there would be no factual basis from which the court could infer a waiver, and mere acquiescence or failure to object, without more, would provide an insufficient basis for a finding of waiver because there would be no evidence from which the court could determine whether counsel had been given a meaningful opportunity to review, comment on and express satisfaction with the instructions, or whether counsel had, in fact, expressed such satisfaction before or after the instructions were given." *State* v. *Kitchens*, supra, 299 Conn. 483 n.23.

[26] In his concurrence in *Kitchens*, Justice Palmer stated that "waiver may be implied—that is, it may be inferred—only if the record reveals conduct by counsel demonstrating *both* that counsel had *knowledge* of the potential constitutional claim *and intentionally* decided to raise it, presumably for strategic reasons." (Emphasis in original.) *State* v. *Kitchens*, supra, 299 Conn. 537 (*Palmer, J.*, concurring).

[27] In response to our conclusion that Justice Palmer's idiosyncratic definition very likely would eviscerate the concept of implied waiver, he cites several "traditional, pre-*Kitchens*" cases in which the court found waiver under reasoning he considers consistent with his definition. Footnote 6 of Justice Palmer's concurring opinion. In none of those cases, however, did the court find waiver under reasoning consistent with his definition because there was no indication in any of those cases that defense counsel was aware that the instruction was defective when counsel agreed to the instruction later challenged on appeal, as Justice Palmer's definition requires. See *State* v. *Hampton*, 293 Conn. 435, 447, 449–50, 978 A.2d 1089 (2009) (defense counsel waived instructional claim on ground that he had accepted instruction that was given as " 'in order,' " and thus correct); *State* v. *Whitford*, 260 Conn. 610, 633, 799 A.2d 1034 (2002) (defense counsel waived instructional claim on ground that counsel, "[b]y agreeing to the proposed instruction, and by failing to object to the supplemental charge as given . . . effectively conceded that it was sufficient to cure any previous impropriety"); *State* v. *Jones*, 193 Conn. 70, 88–89, 475 A.2d 1087 (1984) (instructional claim was waived when counsel "accepted . . . as correct" jury instruction later challenged on appeal); *State* v. *Fuller*, 158 Conn. App. 378, 389–90, 119 A.3d 589 (2015) (defense counsel waived instructional claim under *Kitchens* because counsel indicated multiple times that there were "no issues with the charge"). In relying on the foregoing cases, Justice Palmer fails to distinguish between a proposed instruction being raised at trial and defense counsel agreeing to it, on the one hand, and defense counsel knowing that the instruction is incorrect and agreeing to it, on the other.

[28] We note that, after the court concluded that the doctrine of induced error precluded Lahai from prevailing under *Golding*'s third prong; *State* v. *Lahai*, supra, 128 Conn. App. 457; see *State* v. *Golding*, supra, 213 Conn. 240; it added that, even if defense counsel had not induced the error, Lahai's claim would have been waived under *Kitchens*. See *State* v. *Lahai*, supra, 459–60. This brief reference to *Kitchens*, however, following the court's conclusion that the error had been induced, does not change the fact that *Kitchens* was not essential to the habeas court's holding and had nothing to do with any delay in reaching a final resolution of Lahai's jury instruction claim.

[29] Justice Palmer's attempt to downplay the significance of this fact by stating that the Appellate Court *would have* found a waiver under *Kitchens* *if* the trial court had satisfied the *Kitchens* criteria for implied waiver, thus preventing review of the defendant's claim, is wholly speculative.

[30] See *Carrion* v. *Warden*, Superior Court, judicial district of Tolland, Docket No. TSR-CV-11-4004163-S (December 15, 2015); *Bharrat* v. *Commissioner of Correction*, supra, Superior Court, Docket No. TSR-CV-12-4004615-S; *Lahai* v. *Warden*, supra, Superior Court, Docket No. TSR-CV-09-4003028-S; see also *Myers* v. *Warden*, Superior Court, judicial district of Tolland, Docket No. TSR-CV-14-4005938-S (withdrawn August 12, 2016).

[31] The other two claims were that Carrion's trial counsel was ineffective for failing to investigate and failing to call witnesses. *Carrion* v. *Warden*, supra, Superior Court, Docket No. TSR-CV-11-4004163-S.