******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* TROY JACKSON
(AC 36790)

Lavine, Elgo and Beach, Js.

*Syllabus*

Convicted, following a jury trial, of the crime of murder in connection with the shooting death of the victim, the defendant appealed, claiming, inter alia, that the trial court committed plain error in failing to give the jury a special accomplice credibility instruction as to the testimony of two witnesses, C and N, due to their presence at the scene of the shooting. This court affirmed the defendant's conviction, concluding, inter alia, that he had waived review of his plain error claim. Thereafter, the defendant filed a petition for certification with our Supreme Court, which remanded the matter to this court to consider the merits of the claim that the trial court committed plain error in failing to provide an accomplice credibility instruction to the jury. On remand, *held*:

1. The trial court did not commit plain error by failing to sua sponte provide an accomplice liability instruction, as the defendant failed to establish an indisputable instructional error on the part of the trial court that was so clear and obvious as to require the extraordinary remedy of reversal, which he was required to show under the first prong of the plain error doctrine; neither C nor N was charged with any crimes relating to the murder, nor did either confess to being an accomplice, there was no evidence adduced at trial that C and N had participated in planning the murder, the defendant never suggested that C and N were his accomplices, but argued that the evidence did not support a finding that he was at the scene of the shooting, and, thus, an accomplice credibility instruction would have implicated the defendant in the murder and arguably contravened his right to control the conduct of his own defense.

2. Even if the trial court's failure to provide a special accomplice credibility instruction was an error satisfying the first prong of the plain error doctrine, the defendant's claim nevertheless failed the second prong because the error did not result in manifest injustice: the jury was apprised of any personal motivation or self-interest of C and N in testifying on behalf of the state, including the facts that both of them were incarcerated on unrelated matters, and that N's guilty plea in the other matter included a plea deal pertaining to N's testimony in the present case; moreover, the jury was provided with a general instruction on credibility of witnesses, including an instruction to consider whether the witnesses before it had any interest in the outcome of the case or any bias or prejudice concerning any party or any matter involved in the case, and the jury was presumed to have followed those instructions.

Argued September 8—officially released November 7, 2017

*Procedural History*

Substitute information charging the defendant with the crimes of murder, criminal possession of a firearm and carrying a pistol without a permit, brought to the Superior Court in the judicial district of New Haven, where the charge of murder was tried to the jury before *B. Fischer, J.*, verdict of guilty; thereafter, the charges of criminal possession of a firearm and carrying a pistol without a permit were tried to the court; judgment of guilty, from which the defendant appealed to our Supreme Court, which transferred the appeal to this court, which affirmed the judgment; subsequently, the defendant filed a petition for certification to appeal with the Supreme Court, which remanded the matter to this court to consider the defendant's claim. *Affirmed.*

*Adele V. Patterson*, senior assistant public defender, for the appellant (defendant).

*Ronald G. Weller*, senior assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, state's attorney, and *Stacey M. Miranda*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ELGO, J. This criminal appeal returns to this court following a remand by our Supreme Court. *State* v. *Jackson*, 325 Conn. 917, 163 A.3d 617 (2017). On remand, the Supreme Court has directed this court to consider the merits of the claim of the defendant, Troy Jackson, that the trial court committed plain error in failing to provide a special accomplice credibility instruction to the jury. Id. We conclude that the defendant has not met his burden pursuant to the plain error doctrine and, accordingly, affirm the judgment of the trial court.

As this court noted in its earlier decision, the jury reasonably could have found, on the basis of the evidence adduced at trial, that "[o]n the evening of June 4, 2007, the victim, Julian Ellis, was standing with Sterling Cole on the corner of Lloyd and Exchange Streets in New Haven. The defendant approached the victim along with several unidentified individuals, including Nicholas Newton, and asked whether the victim was dealing drugs in the defendant's territory. After a short exchange, the victim fled. As he ran, the defendant shot him in the back multiple times, resulting in his death.

"The defendant was subsequently arrested and charged in a long form information with murder in violation of [General Statutes] § 53a-54a (a), criminal possession of a firearm in violation of General Statutes § 53a-217, and carrying a pistol or revolver without a permit in violation of General Statutes § 29-35. The defendant elected a jury trial on the murder charge and a court trial on the firearms charges. Following the presentation of evidence, the jury found the defendant guilty of murder and the court found the defendant guilty of the remaining charges. The court sentenced the defendant to a total effective term of sixty years incarceration. The defendant then filed the present appeal." *State* v. *Jackson*, 159 Conn. App. 670, 672–73, 123 A.3d 1244 (2015), remanded, 325 Conn. 917, 163 A.3d 617 (2017).

On appeal, the defendant raised two distinct claims. First, he asked this court to exercise its supervisory powers "to require trial courts to give a special credibility instruction when an incarcerated witness receives a benefit from the state in exchange for testimony regarding a crime that he claims he personally observed prior to his incarceration." Id., 673. This court declined to do so. Id., 675. Second, the defendant claimed that "the [trial] court committed plain error when it failed to give a special accomplice credibility instruction as to the testimony of Cole and Newton." Id. Consistent with the precedent of our Supreme Court established in *State* v. *Kitchens*, 299 Conn. 447, 482–83, 10 A.3d 942 (2011),[1] this court concluded that the defendant had waived review of that claim. *State* v. *Jackson*, supra, 159 Conn. App. 677–79. The defendant thereafter filed

a petition for certification with our Supreme Court.[2]

While that petition was pending, the Supreme Court issued its decision in *State* v. *McClain*, 324 Conn. 802, 155 A.3d 209 (2017). In *McClain*, the court clarified that "a *Kitchens* waiver does not foreclose claims of plain error." Id., 815. In so doing, the court explained that "the policy behind the waiver rule in *Kitchens* is inapposite in the context of claims of plain error . . . ." Id.

In response, the defendant filed a motion for leave to amend his petition for certification with the Supreme Court. By order dated April 26, 2017, the court denied the defendant's request, but granted his petition and remanded his appeal "to the Appellate Court with direction to consider [his] claim of plain error in light of *State* v. *McClain*, [supra, 324 Conn. 802]." The parties thereafter filed supplemental briefs with this court on the issue of whether the defendant's conviction should be reversed pursuant to the plain error doctrine because the trial court "did not sua sponte give a special credibility instruction" to the jury. This court heard oral argument on that issue on September 8, 2017.

As a preliminary matter, we note that "the plain error doctrine in Connecticut, codified at Practice Book § 60-5, is an extraordinary remedy used by appellate courts [only] to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party." (Internal quotation marks omitted.) *State* v. *Bellamy*, 323 Conn. 400, 437, 147 A.3d 655 (2016). "[T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment . . . for reasons of policy. . . . Put another way, plain error review is reserved for only the most egregious errors. When an error of such a magnitude exists, it necessitates reversal." (Citation omitted; internal quotation marks omitted.) *State* v. *McClain*, supra, 324 Conn. 813–14.

In *McClain*, our Supreme Court reiterated "the two-pronged nature" of the plain error doctrine, stating that an appellant cannot prevail thereunder "unless he demonstrates that the claimed error is *both* so clear *and* so harmful that a failure to reverse the judgment would result in manifest injustice." (Emphasis in original; internal quotation marks omitted.) Id., 812. With respect to the first prong, the claimed error must be "patent [or] readily [discernible] on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable." (Internal quotation marks omitted.) Id.; see also *State* v. *Coward*, 292 Conn. 296, 307, 972 A.2d 691 (2009) ("the party seeking plain error review must demonstrate that the claimed impropriety was . . .

clear, obvious and indisputable"). With respect to the second prong, an appellant must demonstrate "that the failure to grant relief will result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Myers*, 290 Conn. 278, 288, 963 A.2d 11 (2009). The Supreme Court has described that second prong as a "stringent standard" that "will be met only upon a showing that, as a result of the obvious impropriety, the defendant has suffered harm so grievous that fundamental fairness requires a new trial." *State* v. *Jamison*, 320 Conn. 589, 599, 134 A.3d 560 (2016). Given that very "demanding" standard, our precedent instructs that "[p]lain error is a doctrine that should be invoked sparingly." (Internal quotation marks omitted.) *State* v. *Bellamy*, supra, 323 Conn. 437–38.

## I

The defendant contends that the trial court committed plain error by failing to sua sponte provide the jury with a special accomplice credibility instruction regarding the testimony of Cole and Newton due to their presence and behavior at the scene of the shooting. "Generally, a defendant is not entitled to an instruction singling out any of the state's witnesses and highlighting his or her possible motive for testifying falsely. . . . An exception to this rule, however, involves the credibility of accomplice witnesses. . . . [When] it is warranted by the evidence, it is the *court's duty* to caution the jury to scrutinize carefully the testimony if the jury finds that the witness intentionally assisted in the commission, or if [he or she] assisted or aided or abetted in the commission, of the offense with which the defendant is charged. . . . [I]n order for one to be an accomplice there must be mutuality of intent and community of unlawful purpose." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Colon*, 272 Conn. 106, 227, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005).

On appeal, the defendant claims that the presence and behavior of Cole and Newton at the scene of the shooting reasonably supports an inference that Cole and Newton either possessed a mutuality of intent and community of unlawful purpose or that they intentionally assisted, or aided and abetted, in the commission of the murder. The defendant notes that Newton arrived at the scene of the shooting with the defendant, while Cole arrived with the victim.[3] Furthermore, the defendant relies on a security camera video of the shooting that was admitted into evidence and played for the jury several times at trial, which depicts Cole and Newton in a circle with the victim and other unidentified individuals moments before the shooting. In that video, the defendant claims that "[a]s the shooter stepped toward the victim raising a gun, Cole faced east and Newton faced west, watching both directions as the crime

occurred." The defendant also argues that "Cole remained present instead of riding away on his bicycle when the shooting started and . . . he stayed looking up the street away from the commotion" at a time when "[e]veryone else [had] immediately run away." In light of the foregoing, the defendant argues that the evidence was sufficient to establish that Cole and Newton were accomplices to the murder of the victim. As such, the defendant maintains that the court was obligated to furnish an accomplice credibility instruction to the jury regarding their testimony.

We disagree that the court's failure to sua sponte provide an accomplice liability instruction under the particular circumstances of this case was plain error. The record reveals that neither Cole nor Newton was charged with any crimes relating to the murder of the victim. See *State* v. *Underwood*, 142 Conn. App. 666, 677, 64 A.3d 1274 (rejecting challenge to court's failure to provide accomplice credibility instruction to jury when, inter alia, witness "was not charged with the same crimes as was the defendant"), cert. denied, 310 Conn. 927, 78 A.3d 146 (2013). This also is not a case in which Cole and Newton confessed to being accomplices. See *State* v. *Jamison*, supra, 320 Conn. 593–94; *State* v. *Brown*, 187 Conn. 602, 613, 447 A.2d 734 (1982).

There also was no evidence at trial that Cole and Newton "had participated in planning the murder." *State* v. *Sanchez*, 50 Conn. App. 145, 156, 718 A.2d 52, cert. denied, 247 Conn. 922, 722 A.2d 811 (1998). Significantly, the defendant never suggested, at trial or in closing argument, that Cole and Newton were his accomplices. Rather, the defendant steadfastly argued that the evidence did not support a finding that he was at the scene of the shooting. In such instances, we cannot conclude that the court's failure to sua sponte provide a special accomplice credibility instruction was plain error on the part of the trial court. Indeed, furnishing that instruction to the jury arguably would have contravened the defendant's well established right to control the conduct of his own defense,[4] as an accomplice credibility instruction, by its very nature, would have implicated the defendant in the victim's murder.

To prevail under the first prong of a plain error analysis, an appellant must demonstrate that the alleged error is "obvious in the sense of not debatable. . . . [T]his inquiry entails a relatively high standard, under which it is not enough for the [appellant] simply to demonstrate that his position is correct. Rather, the [appellant] must demonstrate that the claimed impropriety was so clear, obvious and indisputable as to warrant the extraordinary remedy of reversal." (Internal quotation marks omitted.) *State* v. *Darryl W.*, 303 Conn. 353, 373, 33 A.3d 239 (2012). The defendant has not established such an indisputable instructional error on the part of the trial court. He therefore cannot satisfy the first

prong of the plain error doctrine.

## II

Even if we were to assume that the court's failure to provide a special accomplice credibility instruction was an error satisfying the first prong of the plain error doctrine, the defendant's claim nevertheless fails the second prong because that error did not result in manifest injustice. See, e.g., *State* v. *Sanchez*, 308 Conn. 64, 84, 60 A.3d 271 (2013) ("assuming that it is not debatable that [trial court improperly failed to give particular jury instruction] . . . the omitted jury instruction did not result in manifest injustice"); *98 Lords Highway, LLC* v. *One Hundred Lords Highway, LLC*, 138 Conn. App. 776, 804, 54 A.3d 232 (2012) ("assum[ing] that the [conduct in question] was an error in satisfaction of the first prong of the plain error test, we would be unable to conclude that the results of such a claimed error rose to the level of fundamental unfairness in satisfaction of the second prong of the test"). The appellate courts of this state repeatedly and consistently have held that a trial court's failure to provide a special accomplice credibility instruction does not constitute plain error. See, e.g., *State* v. *Jamison*, supra, 320 Conn. 606 ("we cannot conclude that the omission of the accomplice credibility instruction was so harmful that a failure to reverse the defendant's conviction . . . would result in a manifest injustice"); *State* v. *Diaz*, 302 Conn. 93, 103, 25 A.3d 594 (2011) ("the trial court's failure to give, sua sponte, a jailhouse informant instruction . . . does not constitute plain error when the trial court has instructed the jury on the credibility of witnesses and the jury is aware of the witness' motivation for testifying"); *State* v. *Moore*, 293 Conn. 781, 819, 981 A.2d 1030 (2009) (concluding that defendant "has not met his burden of demonstrating harm under the plain error doctrine" resulting from court's failure to give accomplice testimony instruction), cert. denied, 560 U.S. 954, 130 S. Ct. 3386, 177 L. Ed. 2d 306 (2010); *State* v. *Miller*, 150 Conn. App. 667, 681–82, 92 A.3d 986 (concluding that court's failure to provide specific accomplice instruction did not result in manifest injustice), cert. denied, 312 Conn. 926, 95 A.3d 522 (2014); *State* v. *Schmidt*, 92 Conn. App. 665, 673, 886 A.2d 854 (2005) (concluding that court's failure to provide specific accomplice instruction did not result in manifest injustice when court provided general instruction on credibility that "referred the jury to matters of bias and motivation" and jury was made aware at trial of witness' "motivation and interest in testifying"), cert. denied, 277 Conn. 908, 894 A.2d 989 (2006); *State* v. *Solman*, 67 Conn. App. 235, 240–41, 786 A.2d 1184 (2001) (same), cert. denied, 259 Conn. 917, 791 A.2d 568 (2002). Indeed, as our Supreme Court recently noted, no criminal conviction in this state has been reversed "under the plain error doctrine on the basis of a trial court's failure to give an accomplice credibility instruction." *State* v.

*Jamison*, supra, 600; see id., 598 (rejecting claim of plain error under manifest injustice prong despite fact that "the trial court's failure to give an accomplice credibility instruction was an obvious and readily discernible error").

"[T]he fundamental purpose of an accomplice credibility instruction is to impress on the jury that an accomplice's testimony should be closely scrutinized" because the accomplice may possess a personal motivation or self-interest in testifying on behalf of the state. Id., 606–607. Accordingly, our precedent instructs that "[w]hen that concern is brought to the jury's attention . . . and the jury is given a general credibility instruction that it is presumed to have followed, we see no reason to conclude that the trial court's failure to give an accomplice credibility instruction likely was so harmful that reversal is the only way to avoid manifest injustice to the defendant and to preserve public confidence in the fairness of the judicial proceeding." Id., 607. Such is the case here.

At trial, Newton testified that he currently was incarcerated following his guilty plea in an unrelated murder. His total effective sentence for that crime was thirty-eight years. Newton further acknowledged that, pursuant to the terms of that plea, the state agreed to permit him to apply for a sentence modification that would reduce his sentence from thirty-eight years to thirty-three years if he testified truthfully in the defendant's criminal proceeding. Newton testified that, if he did so, he "would get thirty-three years to serve." On the same day that he entered that plea before the court, Newton provided a statement to the police, in which he identified the defendant as the person who shot the victim on June 4, 2007. Months later, Newton was sentenced in accordance with the terms of his plea agreement.

In his testimony at the defendant's trial, Newton acknowledged that the defendant was the brother of Octavia Jackson, with whom Newton had a son. Newton then testified that he never saw the defendant on June 4, 2007. Although he witnessed the shooting, Newton testified the defendant was not present at that time. In light of that testimony, the court permitted the state, pursuant to *State* v. *Whelan*, 200 Conn. 743, 753, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986),[5] to introduce portions of Newton's statement to the police, in which Newton incriminated the defendant. In his closing argument, the defendant's counsel cautioned jurors that Newton's testimony should be closely scrutinized because he was testifying upon a promise of leniency from the state. As counsel stated: "He also told you that he's in jail for thirty-eight years, which may very well be reduced to thirty-three years just for testifying in this case. That's a deal he cut with [the prosecutor]. . . . Which story of [Newton's] do you believe? This one now that he told you

based upon [the prosecutor's] instructions to make sure he tells the truth in court? Or is it the one he told police so he could get out of jail earlier?"

The jury also was apprised of Cole's potential motivation for testifying at the defendant's trial. In his July 26, 2007 and May 3, 2010 statements to police, as well as his trial testimony on November 29, 2012, Cole identified the defendant as the person who shot the victim on the evening of June 4, 2007. During closing argument, the defendant's counsel noted that Cole had testified at trial that he was incarcerated when a police detective interviewed him regarding the victim's murder. Counsel then asked the jury to consider Cole's motivation for providing his statements to police, stating in relevant part: "Why is he doing that? Maybe he's just a poor observer of things. Does he have no idea that the guy he is trying to place at the scene of a murder some five years ago is nearly half a foot taller than he's claiming? Was he even telling the truth when he said he had known [the defendant] for two years prior to the shooting . . . . [During his testimony, Cole] volunteered . . . that he was incarcerated, volunteered that. Why did police seek him out? These are fair questions, all of them, and they go right to the heart of [Cole's] reliability." The plain import of that argument was that, as an incarcerated individual, Cole's cooperation with law enforcement officials investigating the victim's murder might have been motivated by self-interest.

In addition, the jury was provided with a general instruction on credibility, which we presume it followed. See *State* v. *Wooten*, 227 Conn. 677, 694, 631 A.2d 271 (1993) ("[j]urors are presumed to follow the instructions given by the judge" [internal quotation marks omitted]). The court first advised the jury that it was obligated to "decide which testimony to believe and which testimony not to believe. You may believe or disbelieve all, none, or any part of the witness' testimony." The court then instructed the jury that, in making its credibility determinations, it could consider a number of factors, including whether the witnesses had "any interest in the outcome of this case or any bias or prejudice concerning any party or any matter involved in this case . . . ." The court also instructed the jury on impeachment with prior inconsistent statements pursuant to *Whelan*, with prior convictions of a witness, and principles governing eyewitness identification.

In the present case, the defendant bore the burden of establishing that he was entitled to relief under the plain error doctrine. See *State* v. *Myers*, supra, 290 Conn. 288. He has not met that burden. The jury was specifically instructed by the court to consider whether the witnesses before it had "any interest in the outcome of this case or any bias or prejudice concerning any party or any matter involved in this case . . . ." The

jury also heard testimony that both Newton and Cole were incarcerated for unrelated crimes, and that Newton's guilty plea included an agreement pertaining to his testimony in the present case. Furthermore, during closing arguments, the defendant's counsel encouraged the jury to carefully scrutinize the testimony of Newton and Cole due to their potential motivation and interest in cooperating with the state. We therefore conclude that the defendant has not demonstrated that the court's failure to provide a special accomplice credibility instruction was of "such monumental proportion" that it threatened to erode our system of justice; (internal quotation marks omitted) *State* v. *Bellamy*, supra, 323 Conn. 437; or that it resulted in "harm so grievous that fundamental fairness requires a new trial." *State* v. *Jamison*, supra, 320 Conn. 599.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In *Kitchens*, our Supreme Court held that "when the trial court provides counsel with a copy of the proposed jury instructions, allows a meaningful opportunity for their review, solicits comments from counsel regarding changes or modifications and counsel affirmatively accepts the instructions proposed or given, the defendant may be deemed to have knowledge of any potential flaws therein and to have waived implicitly the constitutional right to challenge the instructions on direct appeal." *State* v. *Kitchens*, supra, 299 Conn. 482–83.

[2] In his October 5, 2015 petition for certification, the defendant stated that, with respect to his first claim regarding the exercise of supervisory authority, "[c]ertification is not sought from disposition of this issue."

[3] In their respective police statements and trial testimony, Cole and Newton acknowledged their presence at the scene of the shooting.

[4] See, e.g., *Faretta* v. *California*, 422 U.S. 806, 819–20, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975) (the sixth amendment "grants to the accused personally the right to make his defense . . . for it is he who suffers the consequences if the defense fails"); *State* v. *Bonilla*, 317 Conn. 758, 772, 120 A.3d 481 (2015) ("[o]ur well established approach to jury instructions and defenses respects the defendant's right to control the conduct of his own defense" [internal quotation marks omitted]); *State* v. *Peeler*, 265 Conn. 460, 470, 828 A.2d 1216 (2003) (observing that "a primary purpose of the sixth amendment is to grant a criminal defendant effective control over the conduct of his defense"), cert. denied, 541 U.S. 1029, 124 S. Ct. 2094, 158 L. Ed. 2d 710 (2004).

[5] In *State* v. *Whelan*, supra, 200 Conn. 753, our Supreme Court determined that an out-of-court statement is admissible as substantive evidence if (1) the statement is a prior inconsistent statement, (2) it is signed by the declarant, (3) the declarant has personal knowledge of the facts stated therein, and (4) the declarant testifies at trial and is subject to cross-examination. That rule has since been codified in § 8-5 (1) of the Connecticut Code of Evidence, which "incorporates all of the developments and clarifications of the *Whelan* rule that have occurred since *Whelan* was decided." (Internal quotation marks omitted.) *State* v. *Bennett*, 324 Conn. 744, 769, 155 A.3d 188 (2017). In this appeal, the defendant has not raised any claim regarding the admission of Newton's prior inconsistent statements.