******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* MONTRELL BROWN
## (AC 40553)

DiPentima, C. J., and Elgo and Bear, Js.

*Syllabus*

Convicted of the crimes of murder and criminal possession of a firearm in connection with the shooting death of the victim, the defendant appealed. He claimed, for the first time on appeal, that the trial court committed plain error by providing inadequate jury instructions regarding eyewitness testimony and identification reliability. Specifically, he claimed that the trial court, sua sponte, should have provided a jury instruction concerning the shortcomings and simple misconceptions about eyewitness testimony, in accordance with certain precedent from our Supreme Court. *Held* that the trial court did not commit plain error by failing to provide, sua sponte, an instruction to the jury concerning the reliability of eyewitness testmony: the defendant failed to explain or to demonstrate how the trial court's alleged error was obvious, readily discernible or resulted in prejudice, or that any manifest injustice occurred as a result of the alleged instructional omission where, as here, a witness was familiar with the defendant and other witnesses had seen the defendant in the neighborhood prior to the shooting and were certain about their identifications of him, as the identification of a person who is well known to the eyewitness generally does not give rise to the same risk of misidentification as does the identification of a person who is not well known to the eyewitness, and this case did not involve persons who were unfamiliar with each other; moreover, this court declined to exercise its supervisory authority over the administration of justice to review and reverse the defendant's conviction, as the defendant failed to establish a legal requirement for the trial court, in the absence of any expert testimony or a request from the defendant for such an instruction, to provide, sua sponte, an additional instruction about eyewitness testimony reliability, nor did he explain how such an alleged omission resulted in prejudice to him.

Argued January 12—officially released May 22, 2018

*Procedural History*

Substitute information charging the defendant with the crimes of murder and criminal possession of a firearm, brought to the Superior Court in the judicial district of Hartford, and tried to the jury before *Mullarkey, J.*; verdict of guilty; thereafter, the court rendered judgment in accordance with the verdict, from which the defendant appealed. *Affirmed.*

*Robert E. Byron*, assigned counsel, for the appellant (defendant).

*Laurie N. Feldman*, special deputy assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *John F. Fahey*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BEAR, J. The defendant, Montrell Brown, appeals from the judgment of conviction, rendered following a jury trial, of murder in violation of General Statutes § 53a-54a (a) and criminal possession of a firearm in violation of General Statutes (Rev. to 2013) § 53a-217 (a) (1). The defendant claims that the trial court erred by providing inadequate jury instructions regarding eyewitness testimony and identification reliability, although his counsel did not make any request for such an instruction. Because the issue was not raised or preserved at trial, the defendant requests that this court reverse his convictions either pursuant to the plain error doctrine or by the exercise of our inherent supervisory powers over the administration of justice. We affirm the judgment of the trial court.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. Between 1 and 2 a.m. on July 27, 2013, near the intersection of Albany Avenue and Vine Street in Hartford, a group of people approached the victim, Edmond Johnson, Jr. This group included two individuals who were identified later as the defendant and his brother, Tremaine Jackson. The victim was shot multiple times and subsequently died from his injuries. Although spent shell casings, a bullet projectile, and live rounds were found near the scene, no gun was recovered.

Three eyewitnesses to the shooting identified the defendant as the perpetrator. The victim's mother, Elizabeth Johnson, also identified and placed the defendant near the location of the shooting shortly after it occurred.

Elizabeth Johnson testified that around 2 a.m. on July 27, 2013, she was walking to pick the victim up near the Ave Super Deli store, where he worked. She was talking to him on her cellphone when she heard gunshots. She testified that as she approached the intersection of Albany Avenue and Burton Street, she saw two people who "looked like [the defendant] and his brother" walking past her on the other side of the street. On cross-examination, she stated that she did not know the defendant's name until after she found out what had happened to the victim.

Valentina Reyes owned the Ave Super Deli store located at the intersection of Albany Avenue and Vine Street. She testified, under subpoena, that around 1 a.m. on July 27, 2013, the victim had injured Jackson with a knife during an altercation. At some point thereafter, Jackson went into her store to wash his hands. The defendant came into the store briefly as well and interacted with Reyes before leaving. She testified that shortly before the shooting, she was in her car about to pick up her mother when she witnessed the defendant, Jackson, and two other individuals approach the victim

on the other side of the street from her store. She witnessed the defendant, the only person she saw with a gun, shoot the victim approximately six times. The following day on July 28, 2013, Reyes submitted a written statement to the Hartford Police Department. She also was given separate photographic arrays from which she identified the defendant as the shooter and identified Jackson as being with the defendant when he shot the victim.[1]

Christopher Chaney, the victim's half-brother, testified that he also witnessed the shooting. He was in the parking lot of a store at the intersection of Albany Avenue and Vine Street when he heard and saw two or three individuals approach the victim. He heard someone tell the victim to put down a knife and then saw the defendant shoot the victim five times. Chaney also identified the defendant from a police photographic array approximately one month after the shooting.[2] Chaney testified that he knew the defendant as "Wolf" but was not friendly with him. On cross-examination, Chaney admitted that he was under the influence of marijuana on the night of the shooting. Detective Christopher Reeder testified that, approximately one month after the shooting, he had shown Chaney a photographic array containing Jackson's photograph, but Chaney was unable to identify him.

Lastly, Deneen Johnson also testified that she witnessed the shooting. Immediately prior to the shooting, she saw the victim walking along the other side of the street. She saw the victim get into an argument with two individuals, one with short hair and the other who was bald. The short-haired individual had a gun and used it to shoot the victim. Approximately one month later, Deneen Johnson gave a statement to the police and identified the defendant and his brother in separate police photographic arrays.[3] She also testified that she did not know the defendant and the other individual with him that night, but had seen them around. On cross-examination, she admitted that she had been drinking alcohol that night.

Following a jury trial, the defendant was sentenced to a total of fifty-nine years incarceration with a twenty-five year mandatory minimum. This appeal followed.

On appeal, the defendant argues that the court committed plain error by not instructing the jury "in conformance with the findings and principles [of eyewitness identification] enunciated in *State* v. *Guilbert*, [306 Conn. 218, 49 A.3d 705 (2012)] . . . ." It is undisputed that the defendant's claim was not raised at trial, although *Guilbert* had been decided prior to the trial in this matter. The defendant requests that this court review his unpreserved claim under the plain error doctrine.[4] "[The plain error] doctrine, codified at Practice Book § 60-5, is an extraordinary remedy used by appellate courts to rectify errors committed at trial that,

although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party. [T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . Implicit in this very demanding standard is the notion . . . that invocation of the plain error doctrine is reserved for occasions requiring the reversal of the judgment under review. . . .

"An appellate court addressing a claim of plain error first must determine if the error is indeed plain in the sense that it is patent [or] readily discernible on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable. . . . This determination clearly requires a review of the plain error claim presented in light of the record.

"Although a complete record and an obvious error are prerequisites for plain error review, they are not, of themselves, sufficient for its application. . . . [I]n addition to examining the patent nature of the error, the reviewing court must examine that error for the grievousness of its consequences in order to determine whether reversal under the plain error doctrine is appropriate. A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice. . . . In *State* v. *Fagan*, [280 Conn. 69, 87, 905 A.2d 1101 (2006), cert. denied, 549 U.S. 1269, 127 S. Ct. 1491, 167 L. Ed. 2d 236 (2007)], we described the two-pronged nature of the plain error doctrine: [An appellant] cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is *both* so clear *and* so harmful that a failure to reverse the judgment would result in manifest injustice." (Emphasis in original; internal quotation marks omitted.) *Reville* v. *Reville*, 312 Conn. 428, 467–69, 93 A.3d 1076 (2014).

"[Our] Supreme Court has described that second prong as a stringent standard that will be met only upon a showing that, as a result of the obvious impropriety, the defendant has suffered harm so grievous that fundamental fairness requires a new trial." (Internal quotation marks omitted.) *State* v. *Jackson*, 178 Conn. App. 16, 21, 173 A.3d 974 (2017), cert. denied, 327 Conn. 998, 176 A.3d 557 (2018).[5] Furthermore, "[t]o prevail on a claim of nonconstitutional plain error, the defendant

must demonstrate that the trial court's improper action likely affected the result of his trial." (Internal quotation marks omitted.) *State* v. *Ortiz*, 71 Conn. App. 865, 872, 804 A.2d 937, cert. denied, 261 Conn. 942, 808 A.2d 1136 (2002).

On appeal, the parties vigorously debate the accuracy of eyewitness testimony by referencing scholarly articles and scientific studies. Although we recognize that in some cases there may be issues regarding eyewitness testimony and identification reliability as discussed in *State* v. *Guilbert*, supra, 306 Conn. 218, the gravamen of the defendant's appeal is that the court erred in its instructions to the jury by failing to provide, despite the absence of a request from the defendant's counsel, an instruction that conformed "with what [our Supreme Court] has ruled about the vicissitudes and shortcomings and simple misconceptions about eyewitness testimony."[6] It is undisputed, however, that neither party offered expert testimony at trial concerning these issues. Nor does the defendant point to, and we have not found, any statute, rule or case law that mandates a trial court to provide, sua sponte, such an instruction to the jury.[7]

The defendant fails to explain or demonstrate how the court's alleged error was obvious or readily discernible. He also does not explain or demonstrate how such error resulted in prejudice given the facts of this case, where one witness knew him quite well over a two year period of time, allowed him to stay in her home, and interacted with him shortly prior to the shooting, and the others had previously seen him in the neighborhood prior to the shooting, and were certain of their identifications. See, e.g., *State* v. *Faust*, 161 Conn. App. 149, 186–88, 127 A.3d 1028 (2015) (defendant failed to establish prejudice when he argued trial court failed to instruct jury on lack of correlation between certainty and accuracy on eyewitness testimony), cert. denied, 320 Conn. 914, 131 A.3d 252 (2016).

Reyes knew the defendant as "Bush" or "Bully Monster" for a "long time, maybe two years." The defendant had previously lived in her home. She had interacted with the defendant shortly after witnessing the altercation between the defendant's brother and the victim, and she also witnessed the shooting. "[A]lthough there are exceptions, identification of a person who is well known to the eyewitness generally does not give rise to the same risk of misidentification as does the identification of a person who is not well known to the eyewitness." *State* v. *Guilbert*, supra, 306 Conn. 259–60.

Chaney recognized the defendant as "Wolf," but did not know him personally nor was he friends with him. Although Deneen Johnson did not know the defendant, she saw him earlier "around that night" in the neighborhood before the shooting. This was not a case involving persons who were unfamiliar with each other.

Finally, the defendant did not demonstrate that any manifest injustice occurred as a result of the alleged instructional omission.[8] Because he has failed to demonstrate either a clear or patent error or that such error resulted in manifest injustice—requirements for the invocation of the plain error doctrine—we cannot conclude that the court committed plain error by failing to include, sua sponte, information on eyewitness testimony reliability, as described in *Guilbert*, in its instructions to the jury.

Alternatively, the defendant requests that this court invoke its inherent supervisory authority over the administration of justice to review and reverse his conviction. "It is well settled that [a]ppellate courts possess an inherent supervisory authority over the administration of justice. . . . Supervisory powers are exercised to direct trial courts to adopt judicial procedures that will address matters that are of utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole." (Internal quotation marks omitted.) *Kervick* v. *Silver Hill Hospital*, 309 Conn. 688, 710, 72 A.3d 1044 (2013); see also *State* v. *Reyes*, 325 Conn. 815, 822, 160 A.3d 323 (2017) ("[t]he supervisory authority of this state's appellate courts is not intended to serve as a bypass to the bypass, permitting the review of unpreserved claims of case specific error—constitutional or not—that are not otherwise amenable to relief under *Golding* or the plain error doctrine" [internal quotation marks omitted]). The defendant has neither established a legal requirement for the court, in the absence of any expert testimony or a request from the defendant for such an instruction, to provide, sua sponte, an additional instruction about eyewitness testimony reliability as supposedly described in *Guilbert*, nor has he explained how such an alleged omission resulted in prejudice to him. We thus decline to exercise our inherent supervisory authority in this case.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Attached to each photographic array is a separate "Hartford Police Department Witness Instructions Identification Procedures" form, which includes, inter alia, instructions on the identification procedure, date, time, and signatory sections, and an "eyewitness statement of confidence" section.

Reyes wrote in the statement of confidence section after identifying Jackson in the photographic array, stating, "[one thousand percent] that [Jackson], he was the one [the victim] sliced with a box cutter on the hand. [Jackson] was with [the defendant] when [the defendant] shot [the victim]." She additionally wrote in the statement of confidence section, after identifying the defendant in the photographic array, stating, "I'm [a thousand, one million percent sure] that [the defendant] is the killer [of the victim]."

[2] Under the statement of confidence section, Chaney wrote "[t]he man with the gun" and "100 [percent] sure."

[3] In the statement of confidence sections after reviewing the photographic arrays, Deneen Johnson wrote that she was "100 [percent] sure" in identifying the defendant and Jackson.

[4] Both parties agree that claims of plain error are not precluded by a waiver pursuant to *State* v. *Kitchens*, 299 Conn. 447, 10 A.3d 942 (2011).

See *State* v. *McClain*, 324 Conn. 802, 815, 155 A.3d 209 (2017).

[5] The plain error doctrine is an extraordinary remedy. In *State* v. *Jamison*, 320 Conn. 589, 600, 134 A.3d 560 (2016), our Supreme Court held: "[P]rior to the Appellate Court's decision in this case, no court of this state ever had reversed a criminal conviction under the plain error doctrine on the basis of a trial court's failure to give an accomplice credibility instruction. This is no doubt attributable to the fact that, [i]n order to prevail under the plain error doctrine, the defendant [is] required to establish not only that his conviction . . . affects the fairness and integrity of and public confidence in the judicial proceedings . . . but that it is more probable than not that the jury was misled by the trial court's . . . error into [finding] him [guilty of the charged offenses]." (Internal quotation marks omitted.) Id. The defendant has not cited us to any Connecticut appellate case, other than *Jamison*, which was reversed by the Supreme Court, where the court found plain error as a result of a failure to provide a specific eyewitness instruction.

Moreover, this is not a case where the court made no charge to the jury concerning eyewitness identification. The eyewitness portion of the charge was comprehensive:

"The state has the burden of proving beyond a reasonable doubt that the defendant was the perpetrator of the crimes. In this case, they presented evidence that three eye witnesses identified the defendant in connection with the crimes charged. Identification is a question of fact for you to decide, taking into consideration all the evidence that you have seen and heard in the course of the trial. The identification of the defendant by a single witness as the one involved in the commission of the crime is, in and itself, sufficient to justify a conviction of such person, provided, of course, that you are satisfied beyond a reasonable doubt of the identity of the defendant as the one who committed the crime or crimes. In arriving at the determination as to the matter of identification, you should consider all the facts and circumstances that existed at the time the observation of the perpetrator by each witness. In this regard, the reliability of each witness is of paramount importance, since identification testimony is an expression of belief or impression by the witness. Its value depends upon the opportunity and ability of the witness to observe the perpetrator at the time of the event and to make an accurate identification later. It is for you to decide how much weight to place upon such testimony.

"In appraising the identification of the defendant as the perpetrator by any witness, you should take into account whether the witness had adequate opportunity and ability to observe the perpetrator on the date in question. This will be affected by such considerations as the length of time available to make the observation; the distance between the witness and the perpetrator; the lighting conditions at the time of the offense; whether the witness had known or seen the person in the past; the history, if any, between them, including any degree of animosity; and whether anything distracted the attention of the witness during the incident. You should also consider the witness's physical and emotional condition at the time of the incident and the witness's power of observation in general.

"Furthermore, you should consider the length of time that elapsed between the occurrence of the crime and the identification of the defendant by the witness. You may also consider the strength of the identification, including the witness's degree of certainty. Certainty, however, does not mean accuracy. You should also take into account the circumstances under which the witness first viewed and identified the defendant, the suggestibility, if any, of the procedure used in that viewing, any physical descriptions that the witness may have given to the police, and all the other factors which you find relating to the reliability or lack of reliability of the identification of the defendant. You may also take into account that an identification made by picking the defendant out of a group of similar individuals is generally more reliable than one which results from the presentation of the defendant alone to the witness. You may also take into account whether the identification of the defendant by the witness was a result of photos that were presented to the witness sequentially, one at a time, or whether the photographs of all potential suspects were presented to the witness simultaneously. The law has recently expressed a preference for sequential presentation of photographs but that preference is not binding upon you. Indicating to a witness that a suspect is present in an identification procedure or failing to warn the witness that the perpetrator may or may not be in the procedure may increase the likelihood that the witness will select one of the individuals in the procedure even when the perpetrator is not present. Thus, such action on the part of the procedure administrator, in other words,

the police officer showing the photograph, may increase the probability of misidentification. This information is not intended to direct you to give more or less weight to the eye witness identification evidence offered by the state. It's your duty to determine what weight to give to that evidence. You may, however, take into account this information, as just explained to you, in making that determination.

"You may consider whether the witness at any time failed to identify the defendant or made an identification that was inconsistent with the identification testified to at trial.

"Now you will subject the witness's testimony by an identification witness to the same standards of credibility that apply to all witnesses. When assessing the credibility of the testimony as it relates to the issue of identification, keep in mind not sufficient that the witness may be free from doubt as to the correctness of the identification of the defendant; rather, you must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant before you may find him guilty on any charge. In short, you must consider the totality of the circumstances affecting identification. Remember, the state has the burden to not only prove every element of the crime, but also the identity of the defendant as the perpetrator of the crime. You must be satisfied beyond a reasonable doubt of the identity of the defendant as the one who committed the crime or crimes, or you must find the defendant not guilty. If you have a reasonable doubt as to the accuracy of the defendant, you will find the defendant not guilty."

Although not addressed by the state, we note that the court's instruction on this section is nearly identical to the criminal jury instructions found on the Judicial Branch website. See Connecticut Criminal Jury Instructions 2.6-4, available at https://www.jud.ct.gov/JI/Criminal/Criminal.pdf (last visited May 16, 2018).

[6] The defendant does not claim on appeal that any of the witnesses actually *misidentified* him. The defendant did not provide to the court for inclusion in its charge, and has not provided to us, any specific proposed instructions or language delineating what he asserts was missing from, or is meant by, "the vicissitudes and shortcomings and simple misconceptions about eyewitness testimony" that allegedly was not included in the court's actual instructions. See footnote 5 of this opinion.

[7] *Guilbert* does not require courts to provide any specific jury instruction concerning eyewitness identification reliability; rather it permits the admission of expert testimony to educate jurors about the risks of misidentification. *State* v. *Guilbert*, supra, 306 Conn. 252; see also *State* v. *Williams*, 317 Conn. 691, 703–704, 119 A.3d 1194 (2015); *State* v. *Day*, 171 Conn. App. 784, 836 n.16, 158 A.3d 323 (2017).

[8] For example, in his argument for plain error, the defendant cites in his brief a lengthy section of *State* v. *Guilbert*, supra, 306 Conn. 234–45, and conclusorily states, "[t]hat is the argument for plain error." This provides an additional reason to affirm the judgment. See, e.g., *Connecticut Light & Power Co.* v. *Gilmore*, 289 Conn. 88, 124–25, 956 A.2d 1145 (2008) (defendant's claim deemed abandoned through inadequate briefing); *In re Shaun S.*, 137 Conn. App. 263, 275, 48 A.3d 74 (2012) (claim abandoned because of respondent's failure to analyze and brief claim adequately).